In re MONAHAN & CO., LTD., Debtor.

W.N. PROVENZANO, INC., Plaintiff,

v.

MONAHAN & CO., INC., Defendant.

Bankruptcy No. 4–81–00079–G.
Adv. No. 4–81–00135.

United States Bankruptcy Court,
D. Massachusetts.

April 21, 1983.

See also, Bkrtcy., 13 B.R. 248, 18 B.R. 637.

Ronald P. Weiss, David A. Parke, Bulkley, Richardson & Gelinas, Springfield, Mass., for plaintiff.

Alan R. Goodman, J.D., Kamberg, Berman, Gold & West, P.C., Springfield, Mass., for defendant.

## MEMORANDUM AND ORDER

PAUL W. GLENNON, Bankruptcy Judge.

This matter is before me on a complaint for damages, and other relief, for the alleged conversion of two rings by the debtor-defendant after the debtor's filing of a petition under Chapter 11.

W.N. Provenzano, Inc., ("Provenzano") the plaintiff, is a manufacturer and wholesaler of jewelry, having its usual place of business in New York City. Monahan & Co., Ltd., ("Monahan"), the debtor, is a company in the retail jewelry business located in Longmeadow, Mass. Arthur B. Jervis was an independent sales representative for a number of jewelry manufacturing firms. During six months in 1980, Mr. Jervis was promoting and delivering jewelry for Provenzano. On November 3, 1980, Jervis visited Monahan's business premises and left there two rings which had been designed and manufactured by Provenzano. At that time a memorandum agreement was signed by Jervis and an employee of Monahan. The agreement stated that:

> The goods described and valued as below are delivered to you for EXAMINATION AND INSPECTION ONLY and remain our property subject to our order and shall be returned to us on demand. Such merchandise, until returned to us and actually received, are at your risk from all hazards. NO RIGHT OR POWER IS GIVEN TO YOU TO SELL, PLEDGE, HYPOTHECATE OR OTHERWISE DISPOSE of this merchandise regardless of prior transactions. A sale of this merchandise can only be effected and title will pass only if, as and when we the said owner shall agree to such sale and a bill of sale rendered therefor.

The agreement also had the address of Provenzano printed on it. Filled in on the agreement was a description of the two rings in question. Mr. Jervis also wrote by hand on the agreement "To work with Customer."

In January and February of 1981, Provenzano made several demands for return of the two rings. The rings were not returned. On February 2, 1981, Monahan filed a voluntary Chapter 11 bankruptcy petition. Sometime thereafter, Monahan sold the two rings; one for $4,250 and the other to an unknown purchaser for an unknown amount. Provenzano claims that the goods were delivered to Monahan on a bailment and not for resale and therefore Monahan, as bailee, unlawfully converted his goods. The plaintiff demands judgment in the amount of $15,500. the asserted fair market value of the rings.

■ In the absence of a statute or agreement, a bailee cannot sell, pledge, mortgage, exchange or give away the property of the bailor. 8 *C.J.S. Bailments* § 32, at 429 (1962). The issue presented to this court is whether the adoption of the Uniform Commercial Code in Massachusetts changes what would have been a bailment relationship. I find that it does.

Section 2–326 of the Uniform Commercial Code ("UCC"), G.L. ch. 106, § 2–326 provides:

> (1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is
>
> (a) a "sale on approval" if the goods are delivered primarily for use, and
>
> (b) a "sale or return" if the goods are delivered primarily for resale.
>
> (2) Except as provided in subsection (3), goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.
>
> (3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum". However, this subsection is not applicable if the person making delivery
>
> (a) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or
>
> (b) establishes that the person conducting the business is generally known by his

**582**

creditors to be substantially engaged in selling the goods of others, or

(c) complies with the filing provisions of the Article on Secured Transactions (Article 9).

(4) Any "or return" term of a contract for sale is to be treated as a separate contract for sale within the statute of frauds section of this Article (Section 2–201) and as contradicting the sale aspect of the contract within the provisions of this Article on parol or extrinsic evidence (Section 2–202).

UCC § 2–326(1)(b), (3) states that even if title is reserved, the transaction will be considered a "sale or return" if the goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved and under a name other than the name of the person making delivery. Clearly in the instant case, Monahan dealt in retail jewelry and was selling jewelry other than under the name of Provenzano. The issue disputed by the plaintiff is whether the goods were delivered to Monahan for sale. Plaintiff first points to the additional language added by Jervis which states "to work with customer" and states that Monahan's authority was only to show those rings to a special customer.[1] Plaintiff argues that the agreement itself is unambiguous and parol evidence is inadmissible. The defendant attempted to offer parol evidence to explain the trade usage of a memorandum in the jewelry business. Plaintiff objects to the admission of this evidence because in Massachusetts the parol evidence rule prohibits consideration by the court of trade usage. *Dekofski v. Leite,* 336 Mass. 127, 130, 142

N.E.2d 782 (1957). Interestingly, this rule conflicts with § 2–202 of the Uniform Commercial Code as adopted in Massachusetts, M.G.L. ch. 106, which permits evidence of trade usage to supplement or explain a written agreement.[2] *See* Liacos, *Handbook of Massachusetts Evidence* 392 (5th ed. 1981).

However, I do not have to decide whether trade usage would be admissible because I find that the language "To work with Customer" is ambiguous and that parol evidence is admissible to explain that ambiguity. Liacos, *supra,* at 391. Both Mr. Jervis, the salesman, and Mr. Monahan testified that Jervis inserted that language because Monahan had potential customers to whom he wanted to sell the rings. Clearly, the rings were left with Monahan so that they could be sold. The plaintiff's argument that the rings were left only to be shown to a customer and could only be sold after Provanzano agreed they could be sold does not negate the fact that the rings were left for the purpose of being sold. While the agreement initially states that the goods were delivered "for examination and inspection only," it further states that "a sale can only be affected ... when we the said owner shall agree to such sale and a bill of sale rendered therefor." Thus, the agreement does provide for a sale albeit the right to sell is subject to certain terms. I find that the goods were delivered to Monahan for sale and thus the transaction is within UCC § 2–326 and is not controlled by the common law of bailment. *See* Anderson, *Uniform Commercial Code,* § 2:326:10, at 780 (powers of consignee to pass title to buyer in ordinary course under

1. In its brief, the plaintiff asserts that Mr. Jervis was not authorized to leave the rings with Monahan. However, because the plaintiff is not seeking to disaffirm the written agreement entered into by Jervis, the court does not have to decide whether Jervis acted outside of his authority as an agent of Provenzano.

2. Mass.Gen.Laws ch. 106, § 2–202. Final Written Expression: Parol or Extrinsic Evidence

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement

with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(a) by course of dealing or usage of trade (Section 1–205) or by course of performance (section 2–208), and

(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

UCC § 2–403(2) reserves prior non-Code law where consignee merely a bailee).

Since the transaction is within UCC § 2–326, the issue becomes what is the status of Provenzano's claim as to the two rings. Subsection (2) of § 2–326 provides that goods held on sale or return are subject to the claims of the buyer's creditors while in the buyer's possession. Since the rings were in the possession of Monahan on the day the Chapter 11 was filed, Provenzano would have a general unsecured claim against the debtor's estate.

■ Although the result may seem unfair, Provenzano was not without protection. Subsection (3) of § 2–326 provides three ways for the consignor to protect its title and interest. The consignor can protect its interest by posting a sign in compliance with local law protecting its rights as a consignor; the interest will be protected if it can be established that the person to whom the goods were delivered is generally known by its creditors to be engaged in selling goods of others; or the consignor can comply with the filing provisions of Article 9. Mass.Gen.Laws ch. 106, § 2–326(3)(a)(b) or (c). The official comment to this section makes it clear that the purpose of this section is to protect the debtor's creditors who may be misled by the secret reservation of title to the consigned goods. *Newhall v. Haines,* 10 B.R. 1019, 1021 (D.C. D.Mt.1981). The evidence indicates that none of the above three conditions existed, therefore Provenzano cannot escape the rule of § 2–326(2). The rationale for this rather strict attitude was well stated in Shanker, *Bankruptcy, and Article 2 of the Uniform Commercial Code,* 40 J.Nat'l.Conf. Reg.Bankr., No. 2, *quoted in In re Gross Manufacturing and Importing Co.,* 328 F.Supp. 905, 909 (D.N.J.1971):

The basis for this hostility to consignment arrangements from the bankruptcy courts is fairly obvious. Regardless of the legal theory of the consignment, in practical operation it looks like a sales transaction in which the unpaid seller retains a secret lien in his goods. From a creditor's point of view, the consigned goods appear to be part of the regular inventory of the consignee which, therefore, ought to be subject to their claims. What is more, unlike a pre-code chattel mortgage, there is no public filing or other notoriety respecting the consignment to warn the creditors that the consignor may have rights in the goods which are superior to theirs.

The Code drafters were apparently much impressed that the consignment situation could be terribly misleading to creditors of the consignee. So, while the Code permits the consignment transaction to continue, it declares that the consignment will be valid as against creditors only if there is some way by which creditors can learn of the consignment.

I find that the two rings which were in Monahan's possession on the day of the filing are subject to the claims of all of Monahan's creditors. *See General Electric Co. v. Pettingell Supply Co.,* 347 Mass. 631, 199 N.E.2d 326 (1964); *In re E.G. Hoover Co., Inc.,* 33 U.C.C.R.S. 906, 16 B.R. 435 (Bkrtcy.M.D.Pa.1982); *In re Bro Cliff, Inc.,* 8 U.C.C.R.S. 242 (Bankr.W.D.Mich.1970).

■ By virtue of M.G.L. ch. 106, § 3–201(1), the retention of title by Provenzano would be limited to a reservation of a security interest. Because no financing statement was filed, the security interest is unperfected and under Mass.Gen.Laws ch. 106, § 9–301 is subordinate to the trustee in bankruptcy since the trustee has all the rights of a hypothetical lien creditor. 11 U.S.C. § 544. Since the debtor in possession is given all the rights and duties of a trustee, 11 U.S.C. § 1107, the debtor in possession can set aside an unperfected security interest. *In re Ateco Equipment, Inc.,* 33 U.C.C.R.S. 898, 17 B.R. 230 (Bkrtcy. W.D.Pa.1982). Provenzano has a general unsecured claim[3] for the price it would have charged Monahan for the two rings as

**3.** The Plan of Reorganization, which was confirmed on December 16, 1981, provides for payment of this claim from funds held in escrow.

stated in the memorandum, i.e., $3250 and $3400.

The subject complaint for damages for conversion is in the nature of a related proceeding as defined in Section (d)(3)(A) of the Emergency Rule promulgated by the United States District Court for the District of Massachusetts and which became effective December 25, 1982. The parties have, however, consented to the entry of judgment by the bankruptcy judge.

For the reason set forth in the foregoing memorandum, it is hereby

ORDERED:

1. That judgment enter for Monahan & Co. Ltd. on the complaint for damages for conversion.

2. That W.N. Provenzano, Inc. has an unsecured claim in the amount of $6650 which claim is ALLOWED. The dividend due W.N. Provenzano, Inc. on this claim shall be paid to Provenzano within ten (10) days from the date of this order.