**EVERGREEN MARINE CORPORATION,**
**Plaintiff,**

**v.**

**SIX CONSIGNMENTS OF FROZEN SCALLOPS, et al., Defendants.**

**Civ. A. No. 92–CV–10895–K.**

United States District Court,
D. Massachusetts.

Oct. 16, 1992.

Thomas J. Muzyka, Clinton & Muzyka, Boston, Mass., for plaintiff.

Hugh J. Gorman, III, Hinckley, Allen, Snyder & Comen, Boston, Mass., for defendants.

## MEMORANDUM ORDER

KEETON, District Judge.

This action arises from plaintiff Evergreen Marine Corporation's ("Evergreen") delivery of six consignments of frozen scallops to defendant Gloucester Corporation ("Gloucester") absent receipt of bills of lading. Evergreen's First Amended Complaint ("Complaint") avers that defendant Gloucester failed to pay for the scallops. Evergreen brings suit against Gloucester, against Fleet National Bank and Cooperative Centrale Raiffesisen Boerenleen Bank, B.A. ("Banks"), lenders to Gloucester that have taken possession of the subject scallops (Banks' Mem.Supp.Mot.Partial Dismissal at 3), and against the scallops *in rem.* Now before the court are: (1) Banks'

motion for partial dismissal (Docket No. 6, filed April 21, 1992) and supporting memorandum (Docket No. 7, filed April 21, 1992); (2) Evergreen's memorandum in opposition to Banks' motion for partial dismissal (Docket No. 12, filed May 6, 1992); (3) Banks' motion to dismiss or for summary judgment (Docket No. 15, filed May 15, 1992) with supporting memorandum (Docket No. 16, filed May 15, 1992); (4) Evergreen's memorandum in opposition to Banks' motion to dismiss or for summary judgment (Docket No. 19, filed June 22, 1992); and (5) Evergreen's memorandum objecting to the presentation and admissibility of the affidavit of Hugh Gorman submitted in support of the Banks' motion to dismiss the Complaint (Docket No. 20, filed June 22, 1992).

Evergreen's First Amended Complaint does not affect the Banks' motion for partial dismissal or supporting memorandum. The Banks incorporated their motion for partial dismissal into their motion to dismiss or for summary judgment. (Banks' Mem.Supp.Mot.Dismiss or Summ.J. at 2.) Accordingly, I will consider Banks' motion for partial dismissal, supporting memorandum, and Evergreen's opposition to partial dismissal in conjunction with Banks' motion to dismiss or for summary judgment and Evergreen's opposition to Banks' motion to dismiss or for summary judgment.

For the reasons stated below: (1) Banks' motion to dismiss Counts I and VII is allowed; (2) Banks' motion to dismiss Counts II and VI is denied; (3) Banks' motion for summary judgment as to Counts I and VII is dismissed as moot; (4) Banks' motion for summary judgment as to Counts II and VI will be allowed, subject to the order herein; and (5) Evergreen's objection to the presentation and admissibility of Hugh Gorman's affidavit is sustained.

## I. Background and Summary of Rulings

The action relates to a contract of carriage between Evergreen and Towamarin, Ltd. ("Shipper") for delivery of six containers of frozen scallops. According to the Complaint, on various dates, Evergreen transported the scallops to Port Elizabeth, New Jersey from Tokyo, Japan. (Compl. Statement of Facts at ¶ 7.) Upon arrival of the scallops in New Jersey, a Gloucester representative told Evergreen that it had a right to the scallops pursuant to the bills of lading, not yet received from Japan. (Compl. Count I at ¶ 11.) Evergreen delivered the scallops to Gloucester in exchange for indemnity agreements and guarantees. (Compl. Count I at ¶ 11; Compl.Ex. B.) Gloucester transported the scallops to its warehouse in Lynn, Massachusetts where, Plaintiff alleges, they are currently located. (Compl. Count II, at ¶ 16.) Gloucester failed, however, to tender the original bills of lading and pay for the scallops. (Compl. Count I at ¶ 13.) Apparently, the Shipper has been paid. (Compl. Count I at ¶ 14.)

Coop. Raiffeisen Bank Lekkerrerk, S.A. of Holland ("Holland") holds the original bills of lading covering the six containers of scallops. (Compl.Ex. C.) Evergreen broke its contract of carriage with the shipper by failing to deliver the cargo to Holland, the holder of the bills of lading. (Tr. April 22, 1992 Hr'g at 4, Docket No. 13.) Holland made demand upon Evergreen for the value of the goods plus interest. (Compl.Ex. C.) Evergreen alleges that Holland is an affiliate of one of the defendant Banks. (Compl. Count VII at ¶ 56.)

The Banks now control the warehouse, the scallops therein, and the assets of Gloucester. (Compl. Count II at ¶ 16.) Evergreen made demand upon the Banks for the scallops or their value. (Compl. Count VI at ¶ 49.) The Banks have refused to surrender the goods, claiming a perfected security interest. (Banks' Mem.Supp.Mot.Partial Dismissal at 3.) Evergreen responds that the Banks have neither a possessory nor a petitory interest in the scallops. (Compl. Count II at ¶ 18.)

Evergreen claims subject matter jurisdiction in federal court pursuant to both admiralty and diversity jurisdiction. (Compl. Statement of Jurisdiction at 1.) The Banks' motion for dismissal as to Count I challenges the Court's authority to assume admiralty jurisdiction. Evergreen responds that it can establish admiralty jurisdiction under a bailment theory. As explained in Part IIA, a bailment relationship,

absent particular circumstances, does not confer admiralty jurisdiction. The Banks' motion to dismiss Count I is, therefore, allowed.

Evergreen's remaining claims against the Banks are based upon state law. In the Complaint, Evergreen successfully pleads the elements of replevin and conversion, but fails to set forth sufficient factual allegations regarding the elements of tortious interference with a contract. Accordingly, the Banks' motion to dismiss Counts II and VI is denied, but their motion to dismiss Count VII is allowed.

The Banks seek summary judgment as to Evergreen's claims against them. In this order, I allow the Banks' motion to dismiss Counts I and VII. Accordingly, I need only consider Counts II and VI in the motion for summary judgment. The only disputed issue of fact is whether or not the Banks currently possess the scallops. This fact does not, however, affect the Banks' motion for summary judgment. Whether or not Evergreen establishes that the scallops are in the Banks' possession, the Banks' interest in the scallops relative to Evergreen's must be decided as a matter of law. Since the Banks' interest is superior to Evergreen's, the motion for summary judgment as to Counts II and VI is allowed.

## II. Motion to Dismiss

For purposes of considering the motion to dismiss, the court accepts as true the factual assertions set forth in the Complaint and in all documents attached as exhibits to the Complaint. *Conley v. Gibson*, 355 U.S. 41, 45–48, 78 S.Ct. 99, 101–03, 2 L.Ed.2d 80 (1957). The court must also draw all reasonable inferences from those assertions in plaintiff's favor. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 276, 96 S.Ct. 2574, 2576, 49 L.Ed.2d 493 (1976). To survive a motion to dismiss, however, plaintiff must set forth in the Complaint "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988).

### A. Subject Matter Jurisdiction

■ The Banks' motion to dismiss for lack of subject matter jurisdiction as to Count I of the Complaint is allowed. Count I is a Petition for Possession and Arrest of Cargo Pursuant to Supplemental Admiralty Rule D. Rule D applies to admiralty jurisdiction only. For the reasons stated below, Evergreen has not established any legal basis for admiralty jurisdiction in this case. Thus, Rule D does not govern this action. Accordingly, Evergreen cannot maintain a claim in Count I.

Evergreen contends that it can establish admiralty jurisdiction under a bailment theory. (Evergreen's Opp'n Banks' Mot.Dismiss at 20–1.) To support its theory, Evergreen relies on *Baker Oil Tools, Inc. v. Delta S.S. Lines Inc.*, 562 F.2d 938 (5th Cir.1977). Evergreen submits that it was a bailee of the scallops and that as such, it has standing to sue to recover possession or the value of the scallops. Further, Evergreen contends that Gloucester's interference with Evergreen's rights in the scallops took place while the scallops were covered by Evergreen's outstanding bills of lading.

Neither *Baker*, nor any other case of which I am aware, supports Evergreen's contention that outstanding bills of lading in conjunction with bailee status confer admiralty jurisdiction. *Baker* stands for the proposition that in particular circumstances, a federal court is not precluded from exercising admiralty jurisdiction over a common law bailment action. *Id.* The particular circumstances in *Baker* were based upon the carrier's liability to the shipper, governed by the Harter Act 46 U.S.C.App. § 190 et seq. (1970). *Id.* at 940. Neither the Harter Act, nor any similar legislation that treats controversies as falling within admiralty jurisdiction applies in the present case. The *Baker* court itself recognized that not all bailments fall within admiralty jurisdiction. *Id.* at 941, n. 5.

Evergreen also contends that this court is empowered to exercise admiralty jurisdiction based upon tortious interference with a maritime contract. The Supreme Court established admiralty jurisdiction

upon a finding of maritime locale plus a relationship to traditional maritime activity. *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). Here, there is no claim that the dispute is related to traditional maritime activity. In construing the language of *Executive Jet*, the First Circuit recognized a limited exception to the "locality plus" rule. *Carroll v. Protection Maritime Insurance Co.*, 512 F.2d 4 (1st Cir. 1975) (conferring admiralty jurisdiction over suits by seamen denied employment due to insurers' blacklisting practices). As the basis for the exception, the court explained that "a contract for services between a seaman and a vessel owner is at the heart of maritime relationships." *Id.* at 6. Although the tortious actions took place on land, the impact "was felt in the operations of the affected vessels at sea." *Id.* at 8. Evergreen argues that the present case fits the First Circuit's limited exception. Evergreen neglects the crux of the First Circuit's holding. The court uses case law from other jurisdictions for the limited purpose of citing support for the impact analysis, *not* as a general basis for conferring admiralty jurisdiction upon a claim of tortious interference with a maritime contract. (Evergreen's Opp'n Banks' Mot.Partial Dismissal at 4.) The court does not simply "engage in an analysis of instances when a tortious interference with contract gave rise to Admiralty Jurisdiction." *Id.* All of the "instances" are related. The impact of each action was felt in navigable waters. In the present case, there is no allegation of an impact felt in navigable waters.

For the reasons stated, there is no basis for admiralty jurisdiction. Thus, Count I of the Complaint must be dismissed. Such dismissal causes the scallops to be dismissed as a party *in rem*, since the scallops are named in this count only.

Evergreen also alleges federal jurisdiction pursuant to diversity jurisdiction. 28 U.S.C. § 1332. Evergreen meets the requisite amount in controversy, claiming damages in excess of $50,000. (Compl. Statement of Jurisdiction at 1.) Furthermore, Evergreen alleges, and the Banks do not

contest, that the controversy is between parties of different states or countries. *Id.* at 2. Accordingly, this court is empowered to hear Evergreen's state claims. Since both parties submitted memoranda assuming that Massachusetts law governs, I will consider the state claims pursuant to Massachusetts law.

### B. Replevin

In Count II of the Complaint, Evergreen makes a claim for replevin and sets forth sufficient facts regarding each element to maintain the action. The elements of replevin are: (1) the goods in question have a value greater than twenty dollars; (2) the goods are unlawfully taken or detained; and (3) the owner or person entitled to possession is deprived of the goods. Mass.Gen.L. ch. 247, § 7.

Evergreen alleges that the value of the scallops is approximately $1,200,00.00. (Compl. Count III, ¶ 29, p. 10.)

Evergreen has adequately pled that the Banks are currently detaining the scallops unlawfully. Evergreen alleges that the scallops are now located at the Gloucester Corporation warehouse and that the Banks control both the warehouse and the contents therein. (Compl. Count II at ¶ 16.) This court draws the reasonable inference that defendant Banks are currently detaining the scallops. *Gooley*, 851 F.2d at 515 (recognizing "inferential" factual allegations to defeat a motion to dismiss). Evergreen further alleges that because the Banks have no title or interest in the scallops, the Banks are unlawfully detaining the scallops. (Compl. Count II at ¶ 18.)

Finally, Evergreen alleges that pursuant to its contract of carriage with the Shipper, Evergreen is entitled to possession of the scallops. (Compl. Count II at ¶ 16.)

Since Evergreen has set forth factual allegations regarding each element of replevin, defendant Banks' motion to dismiss is denied.

### C. Conversion

Count VI of the Complaint states a viable claim against the Banks for conver-

sion. The elements of conversion are: (1) defendant wrongfully exercises control, dominion, or ownership over personal tangible property; (2) plaintiff has an ownership or possessory right in the property interfered with at the time of defendant's wrongful act; (3) defendant's wrongful act damages plaintiff; and (4) demand and refusal, where defendant's possession is not wrongful in its inception. *See Magaw v. Beals*, 272 Mass. 334, 172 N.E. 347 (1930); *Atlantic Finance Corp. v. Galvam*, 311 Mass. 49, 39 N.E.2d 951 (1942).

For the first element, Evergreen alleges that the Banks are wrongfully controlling the scallops since they took possession from Gloucester, which fraudulently obtained them. (Compl. Count VI at ¶ 48.) For the second element, Evergreen alleges that pursuant to its contact of carriage with the Shipper, Evergreen is entitled to possession of the scallops. (Compl. Count VI at ¶ 46.) For the third element, Evergreen claims that the Banks' failure to release the scallops has resulted in lost market value of the scallops and subjected Evergreen to liability from Holland, the holder of the bills of lading. (Compl. Count VI at ¶¶ 51–2.) Finally, Evergreen satisfies the fourth element of conversion by alleging that it has made repeated demands upon defendant Banks to release the scallops, but to no avail. (Compl. Count VI at ¶ 49.) I therefore conclude that Evergreen has set forth sufficient facts to maintain a claim for conversion.

### D. Tortious Interference with a Contract

Count VII of the Complaint alleges a claim against the Banks for tortious interference with contractual relations. Since Evergreen fails to establish the elements of the tort, the Banks' motion to dismiss is allowed. In Massachusetts, the elements of tortious interference with a contract are: (1) there is a contract between plaintiff and a third party; (2) defendant knew of the contract's existence; (3) defendant intentionally and without justification interfered with the contract in an illegal or malicious manner; and (4) plaintiff was damaged by defendant's conduct. *See, e.g., Elm Medical Lab. Inc., v. RKO Gen. Inc.*, 403 Mass. 779, 787, 532 N.E.2d 675 (1989).

The Banks potentially could have interfered with either of Evergreen's two contracts; first, the guaranties and indemnities with Gloucester, and second, the contract of carriage with the Shipper. Evergreen does not allege that the Banks interfered with its guaranties and indemnities with Gloucester. Plaintiff's attorney told this court that the tortious interference was with the contract of carriage between Plaintiff and the Shipper. (Hr'g April 22, 1992, Tr. at 8.)

Making reasonable inferences from Evergreen's factual averments in favor of Evergreen, this court infers that at some point, the Banks knew about the existence of the contract of carriage. Evergreen allegedly made demands upon the Banks to return the scallops. (Compl. Count VII at ¶ 57.)

Evergreen fails, however, to establish that the Banks interfered in any way with the contract of carriage. The Banks allegedly did not even take possession of the scallops until after Evergreen delivered the scallops to Gloucester, breaking the contract of carriage. (Compl. Count VI at ¶ 48.)

The Complaint also alleges tortious interference with Plaintiff's rights and obligations, if any, to the holder of the bills of lading. (Compl. Count VII at ¶ 59.) Although Evergreen may have rights and obligations to the holder of the bills of lading, they are based upon the contract of carriage, not the bills of lading themselves. A bill of lading is a document evidencing receipt of goods for shipment issued by a person engaged in the business of transporting or forwarding goods. Mass.Gen.L. ch. 106, § 1–201(6).

Accordingly, Evergreen's attempt to allege a claim against the Banks for tortious interference is insufficient. The claim is dismissed.

### III. Summary Judgment

A court may allow a motion for summary judgment "if the pleadings, depositions, an-

swers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must consider the record "in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party." *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir. 1983).

To defeat a motion for summary judgment "the non-moving party must demonstrate the existence of a genuine issue of material fact pertaining to those issues on which it would have the burden of proof at trial." *Kauffman v. Puerto Rico Tel. Co.*, 841 F.2d 1169, 1171 (1st Cir.1988). A genuine issue of fact is "one in which the party opposing summary judgment provides evidence 'such that a reasonable jury could return a verdict for the non-moving party.'" *Perez De La Cruz v. Crowley Towing and Transp. Co.*, 807 F.2d 1084, 1086 (1st Cir.1986) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)), *cert. denied*, 481 U.S. 1050, 107 S.Ct. 2182, 95 L.Ed.2d 838 (1986).

The claims against the Banks that survive the motion to dismiss are replevin and conversion. Pursuant to those elements, Evergreen has the burden to prove that its interest in the scallops is superior to the Banks'. Evergreen seems to contend that this is an issue of fact that is solely dependent on Gloucester's interest in the scallops. In this case, the Banks' interests relative to Gloucester's, however, must be decided as a matter of law.

 Evergreen asserts that Gloucester, a bailee, does not have sufficient interest in the scallops to support the attachment of a security interest. (Evergreen's Opp'n Banks' Mot.Dismiss at 8.) In the absence of a statute or agreement, a bailee cannot sell, pledge, mortgage, exchange or give away the property of the bailor. 8 C.J.S. *Bailments* § 32, at 429 (1962). However, the adoption of the Uniform Commercial Code in Massachusetts changes what would have been a bailment relationship. *In re: Monahan & Co.*, 29 B.R. 579, 581 (Bankr.D.Mass.1983) (finding that goods delivered for sale were within U.C.C. § 2–326 and were not controlled by the common law of bailment). Thus, status as a bailee does not preclude the ability to give a security interest.

 Evergreen next contends that since it has a claim against Gloucester upon proof that delivery was made by mistake or fraud, it has the same rights against the Banks. (Evergreen's Opp'n Banks' Mot.Dismiss at 6.) The U.C.C., as adopted by Massachusetts, and the case law do not support Plaintiff's contention. The Uniform Commercial Code views the purchase of goods by an insolvent as fraudulent. U.C.C. Comment to § 2–702, par 2. However, a person with voidable title, i.e. an insolvent buyer, has power to transfer good title to a good faith purchaser for value. Mass.Gen.L. ch 106, § 2–403(1). Furthermore, the holder of a security interest in the buyer's inventory is a purchaser, and a pre-existing claim constitutes value. Mass.Gen.L. ch 106, § 1–201(32, 33, 44(b)). Absent a showing of the Banks' bad faith, the Banks, being secured creditors, have a secured interest in the scallops delivered to Gloucester, even though Gloucester was insolvent. Although the U.C.C. does not resolve the conflicting interests between a seller of goods to an insolvent buyer and the holder of a security interest in the buyer's after-acquired property, a seller's right of reclamation is inferior to a perfected security interest in the goods arising under an after-acquired property clause. *In re: Hayward Woolen Co.*, 3 U.C.C.Rep. Serv. 1107 (Bankr.Mass.1967). Therefore, if the Banks have a perfected security interest in the scallops, their rights are superior to Evergreen's.

Thus, the only possible question of fact is whether the Banks have a perfected security interest in the scallops. (Since the parties have not revealed the results, if any, of the joint inventory survey of the scallops, this court assumes against the Banks, for the purpose of the Banks' motion for sum-

mary judgment, that the Banks possess the scallops.)

■ A preliminary issue is Evergreen's objection to the presentation and admissibility of Hugh Gorman's affidavit submitted in support of the Banks' motion to dismiss or for summary judgment. I conclude that the affidavit does not comply with the requirements of Rule 56(e) of the Federal Rules of Civil Procedure. The affidavit was made by the Banks' attorney. I am concerned that counsel has made himself a potential witness in the present case.

> An attorney who becomes a witness in trial or pretrial proceedings may be required to withdraw from further representations in the case. Cf. ABA Model Code of Professional Responsibility DR 5–102(A); D.Me.R. 25. If there is a genuine dispute about facts to which an attorney attests or testifies, the court may be required to make findings regarding the credibility of the attorney/witness and state those findings publicly. Thus, the use of an attorney affiant to prove disputable facts risks impairing both the attorney/client and the attorney/court relationship. *See United States v. La Rouche Campaign*, 682 F.Supp. 610, 615–16 (D.Mass.1987).

*Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671, 674 n. 1 (1st Cir.1992).

The deficiency of the affidavit is not fatal to the motion, however. A motion for summary judgment may be made with or without supporting affidavits. Fed. R.Civ.P. 56(b). Only the nonmoving party must go beyond the pleadings with its own affidavits, depositions, or answers to interrogatories and set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). Thus, the court need not admit the affidavit to consider the Banks' motion for summary judgment.

Accordingly, I have declined to consider the affidavit in my decision. Nevertheless, the Banks' contentions that they had valid security agreements with Gloucester and that they properly filed financing statements may not be genuinely disputed. Evergreen has not offered any evidence that

the statements made in the affidavit, which I have disregarded, were in fact incorrect.

Whether or not this court may still consider the basis for the Banks' assertion that they have a perfected security interest in the scallops, absent a proper affidavit, is a close and debatable issue. To avoid the risk of needless expense, should a higher court resolve this issue against them, the Banks are allowed fifteen days to file an affidavit in compliance with Rule 56(e). Unless the submitted affidavit adds new facts, rather than merely properly authenticating facts stated in the previous affidavit that I have disregarded, I am not disposed to permit Evergreen's request to present material in response to the Banks' affidavit. Evergreen's request is an unreasonable request for delay, unsupported by any showing of good cause for failure to offer responsive evidence previously, if indeed any would have been available had reasonable effort been made to obtain it.

If the Banks submit a proper affidavit and attachments, then indisputably Evergreen will have failed to carry its burden of setting forth specific facts, in any form, showing that the Banks do not have a perfected security interest and that there is a genuine issue of material fact for trial. A central point is that the Banks do not have the burden of proof on this issue at trial. The burden of proof for both conversion and replevin are on Evergreen. *Town of Boylston v. McGrath*, 348 Mass. 640, 642, 204 N.E.2d 906 (1965); *Dapson v. Daly*, 257 Mass. 195, 197, 153 N.E. 454 (1926). Thus, as to the remaining counts, replevin and conversion, if a proper affidavit is submitted by the Banks, then summary judgment should be entered against Evergreen.

> Although this result may seem unfair, [Evergreen] was not without protection. Subsection (3) of § 2–236 provides three ways for the consignor to protect its title and interest. The consignor can protect its interest by posting a sign in compliance with local law protecting its rights as a consignor; the interest will be protected if it can be established that the person to whom the goods were delivered is generally known by its creditors to be

engaged in selling goods of others; or the consignor can comply with the filing provisions of Article 9. Mass.Gen.Laws ch. 106, § 2–234(3)(a)(b) or (c).

*In re: Monahan & Co., Ltd.,* 29 B.R. at 582. There is a rational basis for the strict standards of the Code. A consignment agreement "looks like a sales transaction in which the unpaid seller retains a secret lien in his goods." *Id.* Thus, the Code "declares that the consignment will be valid as against creditors only if there is some way by which creditors can learn of the consignment." *Id.* Evergreen has not alleged any of the three conditions above. Accordingly, I conclude, as a matter of law, that with an appropriate affidavit in the record, it will be clear that the Banks' interest in the scallops is superior to Evergreen's.