**In re TJX COMPANIES RETAIL SECURITY BREACH LITIGATION.**

**Civil Action No. 07–10162–WGY.**

United States District Court, D. Massachusetts.

Dec. 18, 2007.

Janet G. Abaray, Lopez, Hodes, Restaino, Milman & Skikos, Cincinnati, OH, William A. Baird, Launa Nicole Everman, Wayne S. Kreger, Milstein, Adelman & Kreger LLP, North Santa Monica, CA, John Michael Barclay, Richard P. Rouco, Whatley Drake & Kallas LLC, F. Inge Johnstone, The Lamb Firm LLC, Archie C. Lamb, Jr., Law Offices of Archie Lamb LLC, E. Kirk Wood, Birmingham, AL, Ben Barnow, Barnow & Associates, P.C., Aron David Robinson, Law Office of Aron D., Kevin Barry Rogers, Law Offices of Kevin Rogers, John R. Wylie, Futterman, Howard, Watkins, Wylie & Ashley, Chicago, IL, James R. Byrne Tyler, William H. Champlin, III, William S. Fish, Jr., Cooper & Alcorn LLP, Hartford, CT, Michael G. Caldwell, Benjamin A. Solnit, Tyler Cooper & Alcorn LLP, New Haven, CT, Richard L. Coffman, The Collins Law Firm, Tallahassee, FL, Richard Lyle Coffman, The Coffman Law, Beaumont, TX, Michael G. Crow, Crow Law Firm, LLC, Orleans, LA, Gregory Louis Davis, Greg Davis LLC, Montgomery, AL, Danielle Disporto, Lester L. Levy, Michele F. Raphael, Wolf Popper LLP, Elizabeth Rosenberg, Joe R. Whatley, Jr., Whatley Drake & Kallas

LLC, New York, NY, Robert E. Ditzion, Shapiro, Haber & Urmy, Michael T. Fantini, Jon J. Lambiras, Sherrie R. Savett, Berger & Montague, P.C., Philadelphia, PA, Kristen Marquis Fritz, Robert T. Naumes, Thornton & Naumes LLP, Jonathan Shapiro, Stern, Shapiro, Weissberg & Garin, Thomas G. Shapiro, Shapiro Haber & Urmy, Patrick J. Sheehan, Whatley Drake & Kallas, Boston, MA, Patrick E. Geraghty, Geraghty, Dougherty & Edwards, P.A., Ft. Myers, FL, Michael M. Malinowski, Michael M. Malinowski, PLC, Grand Rapids, MI, Jordan L. Lurie, Leigh A. Parker, Zev B. Zysman, Weiss & Lurie, Los Angeles, CA, James R. Patterson, Harrison, Patterson & O'Connor, San Diego, CA, Ralph K. Phalen, Ralph K. Phalen, Kansas City, MO, John Michael Pickett, Young Pickett & Lee, Texarkana, TX, Eric M. Quetglas–Jordan, Quetglas Law, San Juan, PR, Louis Cooper Rutland, Jr., Rutland Law Firm, Springs, AL, Thomas M. Sobol, Hagens Berman Sobol Shapiro LLP, Cambridge, MA, John S. Steward, Burstein Law Firm P.C., Clayton, MO, John E. Suthers, John E. Suthers, Savannah, GA, for Plaintiffs.

Richard D. Batchelder Jr., Brian R. Blais, Mark Szpak, Harvey J. Wolkoff, Ropes & Gray LLP, James R. Carroll, Nicholas I. Leitzes, Skadden, Arps, Slate, Meagher & Flom, Seth C. Harrington, Douglas H. Meal, Ropes & Gray LLP, Boston, MA, Christopher P. Connors, Skadden, Arps, Slate, Meagher & Flom, Steven P. Mandell, Stephen J. Rosenfeld, Mandell Menkes & Surdyk LLC, Erich Paul, Schork Barnow and Assoc., PC, Chicago, IL, John E. Goodman, Michael R. Pennington, Michael F. Walker, Bradley, Arant, Rose & White LLP, North Birmingham, AL, Malcome A. Heinicke, Munger, Tolles & Olson, San Francisco, CA, Darrel J. Hieber, Skadden, Arps, Slate, Meagher & Flom, Cary B. Lerman, Teri-Ann E. Nagata, Munger, Tolles & Olson, Marcus R. Mumford, Skadden, Arps, Slate, Meagher & Flom, Los Angeles, CA, James C. Huckaby, Jr., Christian & Small, LLP, David G. Hymer Bradley, Arant, Rose & White, John W. Scott, Scott, Dukes & Geisler, PC, Birmingham, AL, Brant M. Laue, Kansas City, MO, C. Bradford Marsh, Swift, Currie, McGhee & Heirs, Atlanta, GA, Margaret Diane, Mathews Akerman, Tampa, FL, Harry Rosenberg, Phelps & Dunbar, LLP, New Orleans, LA, Richard J.J. Scarola, Alexander Zubatov, Scarola Ellis LLP, New York, NY, Robert N. Webner, Vorys Sater Seymour and Pease LLP, Columbus, OH, William Breck, Weigel Vorys, Sater, Seymour and Pease, LLP, Cincinnati, OH, for Defendants.

Margaret M. Pinkham, Paul W. Shaw, Brown Rudnick Berlack Israels LLP, Boston, MA, for Interested Party.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

## I. THE MOTIONS TO AMEND

On October 25, 2007, Amerifirst and SELCO Community Credit Union (collectively, "Amerifirst") moved for leave to amend their consolidated class action complaint against Fifth Third Bank and Fifth Third Bancorp ("Fifth Third"). On that same date, Amerifirst, three bankers' associations, Eagle Bank, Saugusbank, and Collinsville Savings Society (collectively, the "issuing banks") sought leave to amend their consolidated class action complaint against TJX Companies, Inc. ("TJX").[1]

---

**1.** Amerifirst and the issuing banks have also recently filed motions for reconsideration of the Court's decision to deny class certification in this action. This Court has reviewed the filings related to that decision; those motions are without merit. As an initial matter, this

The proposed amendments were virtually identical and had the primary objective of adding new theories of liability with regard to Fifth Third and TJX; one asserted a cause of action for conversion.[2] Amerifirst and the issuing banks based this claim on the premise that they have a "protectable property interest" in cardholder information and data, Proposed Fifth Third Am. Compl. [Doc. 201 Ex. 1] ¶¶ 121, 126; Proposed TJX Am. Compl. [Doc. 202 Ex. 1] ¶¶ 136, 140, and that "by failing to safeguard and by storing the cardholder information and data, [the defendants] knowingly and wrongfully exceeded [their] authorized use of the Plaintiff Banks' property and wrongfully exercised control and dominion over this property." Proposed Fifth Third Am. Compl. ¶ 124; Proposed TJX Am. Compl. ¶ 139. Amerifirst and the issuing banks argued that the authorized scope of the data's storage and retention is outlined by the Visa and MasterCard Card Operating Regulations and the Payment Card Industry Data Security Standards. Proposed Fifth Third Am. Compl. ¶¶ 122–124; Proposed TJX Am. Compl. ¶¶ 137–139.

 Assuming for the purpose of this analysis that Amerifirst and the issuing banks have a protectable property interest in cardholder and account data, the nature of that property is intangible. At common law a plaintiff can recover for conversion only in cases involving tangible chattels. *See Harvard Apparatus, Inc. v. Cowen*, 130 F.Supp.2d 161, 164 (D.Mass.2001)(Bowler, M.J.) (noting the traditional scope of the common law tort of conversion). Entertaining the proposed conversion claim, therefore, would require the conclusion that Massachusetts would be amenable to the expansion of the scope of this tort.

In arguing that this is the case, Amerifirst and the issuing banks rely on a decision of the Court of Appeals of New York, *Thyroff v. Nationwide Mutual Insurance Co.*, 8 N.Y.3d 283, 832 N.Y.S.2d 873, 864 N.E.2d 1272 (2007). Nationwide employed Thyroff as an insurance agent and leased him computer hardware and software. Thyroff then stored personal correspondence and documents, as well as business-related information, on that computer. *Id.* at 1273. When Nationwide terminated Thyroff, it repossessed Thyroff's computer system, denying Thyroff access to the personal information stored upon it. *Id.* Thyroff sued, asserting several causes of action including conversion. *Id.* The Second Circuit Court of Appeals certified the following question to the Court of Appeals of New York: "is a claim for conversion of

---

Court respectfully disagrees with plaintiffs' counsel that reliance is irrelevant to the chapter 93A cause of action. As this Court previously explained, while reliance is not generally an element that must be proven in order to prevail on a chapter 93A claim, in some cases—including this one—it forms an "essential link" in the chain of causation that must be demonstrated. *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. at 398 (D.Mass. 2007) (quoting *Trifiro v. New York Life Ins. Co.*, 845 F.2d 30, 33 n. 1 (1st Cir.1988)); *see also Massachusetts Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 62 F.Supp.2d 236, 242 n. 3 (D.Mass.1999) (O'Toole, J.).

That said, even were the Court to accept the narrowed class definition proposed by Amerifirst and the issuing banks, the individualized issues of reliance and comparative fault would still remain and predominate, rendering this action inappropriate for class certification.

2. Amerifirst and the issuing banks also sought to add a new basis for liability under Massachusetts General Laws chapter 93A, but the Court concludes that ground is without merit in light of this Court's previous rulings in this action. Accordingly, this memorandum will be limited to the conversion claim.

electronic data cognizable under New York law?" *Id.* at 1273.

In answering, the Court of Appeals of New York noted that conversion has historically been limited to physical chattels. *Id.* at 1275–76. Nonetheless, the court "believe[d] that the tort of conversion must keep pace with the contemporary realities of widespread computer use." *Id.* at 1278. Because a document's method of creation—electronically or with quill and parchment—does not alter the value of the information it contains, the court concluded that "the protections of the law should apply equally to both forms——physical and virtual." *Id.* Thus, the court held that "electronic records that were stored on a computer and were indistinguishable from printed documents [are] subject to a claim of conversion in New York." *Id.*

Citing *Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 650 F.Supp. 838 (D.Mass. 1986) (Caffrey, S.J.), Amerifirst and the issuing banks argue that Massachusetts is predisposed to follow New York's lead and thus that the intangible nature of the property here does not render their claims futile. In *Quincy*, a cable system and a network brought suit against bars that were intercepting satellite signals and showing the network's programming to bar patrons without paying the subscription fee. *Id.* at 840. The court held that the cable system had a proprietary interest in the satellite signals insofar as it had paid the network for the exclusive right to carry the network's programming and that the cable system had the right to "possession of the transmissions." *Id.* at 848. As

a result, the court ruled that the plaintiff's complaint stated a claim for conversion sufficient to survive a motion to dismiss. *Id.*

More recently, however, the District of Massachusetts has consistently noted that in Massachusetts "the general rule is that conversion ... relate[s] to interference with tangible rather than intangible property." *John G. Danielson, Inc. v. Winchester–Conant Props., Inc.*, 186 F.Supp.2d 1, 28 (D.Mass.2002) (suggesting that *Quincy* is "contrary to the usual view of conversion"); *see also Portfolioscope, Inc. v. I–Flex Solutions Ltd.*, 473 F.Supp.2d 252, 256 (D.Mass.2007) (Tauro, J.) (noting that conversion and replevin claims "require an allegation of wrongful possession of tangible property"); *Jayson Assocs., Inc. v. United Parcel Serv. Co.*, 2004 WL 1576725, at *2 (D.Mass.2004) (Zobel, J.) ("[The defendant] properly asserts that a cause of action for conversion ... does not apply to intangible items."); *Patricia Kennedy & Co. v. Zam–Cul Enterprises, Inc.*, 830 F.Supp. 53, 59 (D.Mass. 1993) (stating that a claim for conversion in Massachusetts requires an allegation that "personal tangible property" was taken by the defendant) (quoting *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 806 F.Supp. 291, 296 (D.Mass.1992)).

Furthermore, in the 21 years since *Quincy*, the courts of Massachusetts have declined to adopt its reasoning, instead adhering to a more traditional view of conversion.[3] *See, e.g., Export Lobster Co.*

---

**3.** In addition to claims with regard to tangible property, Massachusetts courts have entertained claims for conversion for intangible property in limited circumstances in which the so-called "merger doctrine" is satisfied. Under the merger doctrine, intangible property rights may be the subject of conversion if they "customarily merge in or identify with

certain kinds of documents." *Commonwealth v. Rizzuto*, 1980 WL 4637, at *3 (Mass.Super.1980). In order for the doctrine to apply, "the right [must] so inhere[ ] in the document that possession of the latter controls or precludes the exercise of the former." One example is a bank passbook, as a depositor cannot withdraw their balance without it. *Id.*

*v. Bay State Lobster Co.,* 1994 WL 902930, at *6 (Mass.Super.1994) (Doerfer, J.) (Because "conversion is an intentional exercise of dominion or control over a chattel ... intangibles ... may not be the subject of a conversion action.")(internal quotation marks and citation omitted); *Wozniak & Padula, P.C. v. Gilmore, Rees, Carlson, & Cataldo, P.C.,* 2005 Mass.App. Div. 49, at *2, 2005 WL 851085 (2005) ("Generally, intangible property not merged in, or evidenced by, a document may not be the proper subject matter of conversion."); *Discover Realty Corp. v. David,* 2003 Mass.App. Div. 172, at *3, 2003 WL 22387138 (2003). Taken as a whole, the treatment of conversion by both the District Court and the courts of the Commonwealth before and after *Quincy* strongly suggests that the District Court's ruling in *Quincy* that a conversion claim based on intangible property did not fail to state a claim upon which relief could be granted under Massachusetts law was in error. This Court follows the law as stated by the vast majority of courts that have addressed the issue and concludes that a claim for conversion based on the type of intangible property at issue here likely is not cognizable in Massachusetts.[4]

Moreover, even if Massachusetts courts were to follow *Thyroff,* Amerifirst and the issuing banks may still be without a colorable claim. *Thyroff's* holding was limited. It did not expand the scope of conversion to cover *any* electronic data, but instead permitted an action only where the electronic data, such as Thyroff's, was "indistinguishable from printed documents."[5] *Thyroff,* 832 N.Y.S.2d 873, 864 N.E.2d at 1278. It is not difficult to understand why the Court of Appeals of New York characterized *Thyroff's* data this way. The correspondence or personal records maintained by Thyroff on his computer have ready analogues in the physical world—a printed email, a handwritten letter, an address book. On the other hand, TJX contends that "[i]t would be impossible to access TJX's computer system and simply print out reports replete with the information that is the subject of [the plaintiffs'] claim."[6] TJX Mem. in Opp. [Doc. 229] at 9. To the extent this is the case, the data at issue here may very well fall outside the scope of conversion even as delineated by *Thyroff.*

Accordingly, this Court denies without prejudice the motions for leave to amend the consolidated class complaints [Doc. 201 & 202]. This decision brings this Court's involvement in this case to an end—at least temporarily. Because class certification was denied, the minimal diversity re-

---

The application of this doctrine is not appropriate in this case; Amerifirst and the issuing banks do not argue to the contrary.

4. Amerifirst and the issuing banks attempt to rebut this conclusion by pointing out that the legislature has passed a criminal larceny statute that defines "property" to include "electronically processed or stored data, either tangible or intangible, [and] data while in transit." Mass. Gen. L. ch. 266 § 30. This Court greets with skepticism the notion that the scope of a common—law tort is defined by reference to a statutory crime. Furthermore, the Court notes that the relevant portion of the larceny statute was passed in 1983, but state and federal courts—with the excep-

tion of *Quincy*—have nonetheless continued to apply the traditional definition of conversion. As such, the argument made by Amerifirst and the issuing banks is unpersuasive.

5. The court specifically indicated that it "[did] not consider whether any of the myriad other forms of virtual information should be protected by the tort [of conversion]." *Thyroff,* 832 N.Y.S.2d 873, 864 N.E.2d at 1278.

6. TJX asserts that this is due both to the nature of the information and because the information may have been masked, encrypted, or embedded with other data. TJX Mem. in Opp. at 9.

quirement accorded such actions no longer applies and, as the named parties are not completely diverse, the Court is without subject matter jurisdiction.[7] *See In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 399–400 (D.Mass.2007). Because everyone agrees the Court no longer has subject matter jurisdiction, Tr. of Oral Arg. at 4, 12, the proper course requires dismissal. Nevertheless . . .

## II. Transfer and Dismissal

■ All parties agree that this case involves some complex issues concerning the common law of the Commonwealth of Massachusetts—issues the plaintiffs seek to have certified to the Supreme Judicial Court of Massachusetts. Mot. to Cert. Question [Doc. 190] at 1. "The great trial court of the Commonwealth," the Massachusetts Superior Court, *McArthur Bros. Co. v. Commonwealth*, 197 Mass. 137, 139, 83 N.E. 334 (1908) (Rugg, J.); *Pinnick v. Cleary*, 360 Mass. 1, 41 n. 3, 271 N.E.2d 592 (1971)(Tauro, C.J., concurring); *Irwin v. Commissioner of the Department of Youth Servs.*, 388 Mass. 810, 815, 448 N.E.2d 721 (1983)(Lynch, J.); *Pierce v. Dew*, 626 F.Supp. 386, 387 (D.Mass.1986); *Roy v. Bolens Corp.*, 629 F.Supp. 1070, 1072 (D.Mass.1986), "is very likely the finest common law trial court in America today." William G. Young, John Pollets & Christopher Poreda, Massachusetts Evidentiary Standards xi (2007 ed.). As Fifth Third has raised no objection to personal jurisdiction in this Court and has purposefully availed itself of the privilege of doing business in Massachusetts, it would appear to be subject to personal jurisdiction in the courts of the Commonwealth, *see* Mass. Gen. L. ch. 223A § 3 (Massachusetts long-arm statute); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), and as TJX is headquartered in Framingham, Massachusetts, venue would appear to be proper in the Massachusetts Superior Court sitting in and for the County of Middlesex. *See* Mass. Gen. L. ch. 223 § 8.[8]

Transferring this case to the Massachusetts Superior Court has enormous practical advantages: the Superior Court is intimately familiar the state law issues upon which liability will turn, *see Cumis Ins. Soc., Inc. v. BJ's Wholesale Club, Inc. and Fifth Third Bancorp*, No. 05–1158 (Mass.Super.Dec.1, 2005) (Quinlan, J.); it is a common law court able to fashion relief coincident with the needs of society even absent controlling precedent (this Court may not); the enormous transaction costs already incurred in the prosecution and defense of this action will not be wasted [9]; Fifth Third is waiting to be heard on a fully briefed motion for summary judgment; and, not the least important, should the Superior Court choose to revisit the rulings already made by this Court (all of which this Court has declared to be "without prejudice" to reexamination in the courts of the Commonwealth), either

---

7. Of course, the Court still has jurisdiction to determine its own jurisdiction, *see, e.g., Chicot Cty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376, 60 S.Ct. 317, 84 L.Ed. 329 (1940), and on this basis the Court entertained the motion for reconsideration, *see supra* note 1, and the motion to amend (which could have laid a fresh groundwork for class certification), both denied herein.

8. From there, the case might be transferred to the distinguished Business Law Session of the Superior Court sitting in Suffolk County. *See In re TJX*, 246 F.R.D. at 400–01.

9. *But see Highfields Capital Ltd. v. SCOR, S.A.*, No. 04–10624, slip op. at 5–6 (D.Mass. Aug. 1, 2006) (Wolf, C.J.) (opining that the Superior Court was "likely" to allow use of discovery previously taken in federal court when declining to "refer" the case to state court rather than to dismiss it).

side—armed with a ruling on Massachusetts law which this Court will treat as "law of the case"—can remove the action and return to this Court upon a well pleaded motion for class certification (with its attendant minimal diversity requirements).

Seeing the doors of the federal courthouse closing in their faces, the plaintiffs favor this course. Fifth Third is neutral, perhaps scenting victory on its motion for summary judgment. Only TJX obdurately opposes such a transfer, arguing that this Court can do nothing more than dismiss this action, citing dicta in *Mills v. State of Maine*, 118 F.3d 37, 51 (1st Cir.1997), and *Pallazola v. Rucker*, 797 F.2d 1116, 1128–29 (1st Cir.1986). TJX Mem. in Supp. Mot. to Stay Remand/Transfer [Doc. 283] at 2–3. TJX's stance is not hard to understand. It has prevailed upon significant issues in the litigation, *see, e.g.*, In *re TJX Retail Sec. Breach Litig.*, 524 F.Supp.2d 83 (D.Mass.2007) (granting TJX's motion to dismiss in part), and naturally opposes watering these decisions down to rulings "without prejudice." Moreover, now that the motion for class certification has been denied, TJX faces liability measured in the thousands rather than the millions of dollars. Rendering useless the extensive discovery and transaction costs already incurred may give TJX the leverage it needs

to resolve fully this action through settlement with the named plaintiffs, who may elect not to press on in the face of such daunting repetitive costs.

TJX's quarrel, however, is not with this Court over federal law. After all, this court is dismissing the action not on the merits but for lack of subject matter jurisdiction, just as TJX wishes. This dismissal—a final order in federal court—sets the stage for appeal to the United States Court of Appeals for the First Circuit.

This Court is also transferring the docket and papers to the Massachusetts Superior Court sitting in and for the County of Middlesex just as it would do in the usual "remand" situation. This is the practice followed by this Court for 22 years in instances where federal claims are resolved prior to trial and supplementary state claims remain. For over two decades, the Massachusetts Superior Court without exception has accepted such transfers and has continued to handle the transferred cases without missing a beat. In each of these cases, however, no objection to the transfer was raised by any party.

Apparently TJX objects to this longstanding practice. It may, of course, raise its objections in the Superior Court as its concerns go to the exercise of that court's common law jurisdiction.[10] While I ex-

---

**10.** Comparatively little today is being written about America's courts of general common law jurisdiction. This is a shame because these courts are the true backbone of the country's justice system. Today, with the executive ascendant, the legislature divided and distrustful of the federal courts, and military commissions claiming the prerogative to dispose of those whom society most fears, it is little wonder that the press views all courts as nothing more than a "parallel track," Thanassis Cambanis, *New Federal Security Act Remains Largely Unused*, Boston Globe, June 23, 2002, at B1; Adam Liptak, *Accord Suggests U.S. Prefers to Avoid Courts*, N.Y. Times, July 16, 2002, at A14 (both cited in *United States v. Reid*, 214 F.Supp.2d 84, 98 n. 11 (D.Mass.

2002)), to the (apparently more important) military commissions.

In truth, courts of general common law jurisdiction most closely reflect society's needs, values, concerns, and mores. The Massachusetts Superior Court is such a court. Although created by statute, it has been granted by the legislature the common law authority to fashion a remedy for every ill. For example, the Massachusetts Superior Court recognized a cause of action for loss of consortium from the injury of a child well before Massachusetts statutes were amended to create such an action. *Compare Prince–Jackson v. Children's Hospital Medical Center*, No. 72769 (Mass.Super. April 8, 1985) (recogniz-

press no opinion, I have every confidence that the Massachusetts Superior Court will do justice in the premises.

## III. CONCLUSION

For all of the reasons stated above, the case is transferred to the Massachusetts Superior Court sitting in and for the County of Middlesex.[11] This case is dismissed in this federal court, not based on the merits, but because this Court, after denying class certification, lacks subject matter jurisdiction.

SO ORDERED.

ing parent's right at common law to sue for loss of consortium arising out of injuries to a minor child) *with* Mass. Gen. L. ch. 231 § 85X (enacted July 24, 1989 and providing statutory recognition of same cause of action). Its ability to fashion a fair and just procedure to handle this matter is beyond doubt.

Indeed, common law courts hark back to the middle ages and came to full flower during the reign of Edward I, a true warrior king and capacious legalist. Hear, for example, what one scholar has to say about the Statute of Rhuddlan, March 19, 1284:

> [T]he judges were keenly aware of social grievances and were anxious to make the law an instrument of reform. The professionals took pride in the fact that a writ could be devised for any circumstance, and by the early decades of the thirteenth century, they had standardized writs "of course," each of which would cover a problem likely to recur in the courts.... [I]n pleadings, the objective is to arrive at the truth, and the court must not work following that hard rule [which TJX seems to advocate here], "He who fails in a syllable fails in the whole cause."

David Walker, Medieval Wales 139, 141, 142 (Cambridge Univ. Press, 1990).

It is worthy of note that the flowering of the system of common law courts depended on society's reliance on the jury system, a reliance which in the Wales of Llewelyn ap Gruffydd (to which the Statute of Rhuddlan was applied) excluded "trial by battle and recourse to the grand assize, [which] were not available in Wales." *Id.* at 143.

11. This Court announced its intention to transfer and explained the grounds therefore at the hearing on December 11, 2007. This Court also stated it would wait seven days in order to allow any party further to brief the matter or to seek a stay. On the sixth day, TJX did so, seeking a stay of any transfer order. TJX Mot. to Stay Remand/Transfer [Doc. 282]. That motion is denied.