**LIMOR DIAMONDS, INC., Plaintiff,**

v.

**D'ORO BY CHRISTOPHER MICHAEL, INC., et al., Defendants.**

No. 82 Civ. 3299 (MEL).

United States District Court,
S.D. New York.

March 15, 1983.

F. William Meservey, P.C., Huntington, N.Y., for plaintiff.

Weil, Gotshal & Manges, New York City, for defendants Commercial Credit Business Loans, Inc. and NorthPark National Bank; Robert F. Brodegaard, Sanford F. Remz, New York City, of counsel.

Davis, Markel, Dwyer & Edwards, New York City, for defendants Vitale, Inc. and Incompari, Inc.

LASKER, District Judge.

In this action for conversion and conspiracy to convert diamonds, two of the defendants move, pursuant to Fed.R.Civ.Pr. 56, for summary judgment dismissing the complaint against them. Because genuine issues of material fact remain in dispute the motion is denied.

The general factual setting of this case is largely undisputed. In September 1980, defendant Commercial Credit Business Loans, Inc. ("Commercial") entered into an inventory loan agreement with codefendant D'Oro by Christopher Michael, Inc. ("D'Oro"), using as collateral all of the "now owned and hereafter acquired inventory of [D'Oro] ... including, but not limited to ... diamonds." Two financing statements to this effect were filed with the Secretary of the State of Texas, thus perfecting Commercial's security interest in the collateral in compliance with Texas' version of the Uniform Commercial Code (UCC).[1] Shortly after filing the financing statements, Commercial entered into a participation agreement with the NorthPark National Bank ("NorthPark"), by which NorthPark purchased a participatory interest in the advances made by Commercial to D'Oro. In 1980 and 1981, loans were made to D'Oro pursuant to the agreement and secured by D'Oro's inventory.

In late December 1981 and early January 1982, Limor Diamonds, Inc. ("Limor"), a wholesaler, shipped the diamonds at issue in this litigation, through its agent, to D'Oro, which was in the business of retail selling and jobbing. Limor neither notified D'Oro's secured creditors of its interest in the diamonds, nor did it file with the Secretary of State to perfect that interest.

In February 1982, D'Oro defaulted on its loan agreement with Commercial. In March of that year Commercial took possession of D'Oro's inventory, including the diamonds Limor had shipped for which D'Oro had never paid.

---

1. Tex.Bus. & Com.Code Ann. § 9.114. The transactions and goods at issue were all located in Texas, and the parties do not dispute that Texas law applies.

Subsequent to its taking possession of the collateral, Commercial retained Incompari, Inc. as its agent for disposal of the diamonds. The president of Incompari and of D'Oro is the same person. Limor alleges that the operations of D'Oro have been assumed by a former officer of D'Oro. Limor contends that Incompari, Vitale, D'Oro, NorthPark and Commercial conspired to convert the diamonds at issue. All are named defendants in this action, but only NorthPark and Commercial move for summary judgment.

\* \* \* \* \* \*

Movants argue: (1) that their interest in the diamonds, which was perfected, is superior to that of Limor, which was not; and (2) that no conversion took place when they took possession of the diamonds. Limor argues that the diamonds were delivered to D'Oro on consignment, and that Limor therefore retained a superior interest in them.

 Limor's contention that its transaction with D'Oro was intended to be a consignment is not persuasive.[2] Under the UCC, the intention of the parties is not determinative of the question whether a transaction is a sale or consignment. *Bufkor, Inc. v. Star Jewelry Co., Inc.,* 552 S.W.2d 522, 524 (Tex.Civ.App.1977). The transaction between Limor and D'Oro was a "sale or return," and, as such, the goods in D'Oro's possession were subject to the claims of NorthPark and Commercial as D'Oro's creditors. UCC § 2.326. Limor could have protected its interest in the diamonds by complying with the filing provisions of Article 9, which it admittedly did not do. By failing to file, the aggrieved seller Limor retained only an unperfected security interest in the diamonds, superior to D'Oro's interest but inferior to the perfected interest of NorthPark and Commercial.

 In the ordinary case, the right of a secured party to collateral is superior to that of the unpaid seller. *Villa v. Alvarado State Bank,* 611 S.W.2d 483, 487 (Tex.Civ. App.1981). Whether bad faith on the part of movants, the secured parties, in seizing the collateral would alter their priority over Limor, the unpaid seller, appears to be a question of first impression, and one which the movants have not addressed. The relevant case law appears to suggest that a bad faith seizure of their collateral would subordinate movants' rights as secured parties.

In *Matter of Samuels,* 526 F.2d 1238 (5th Cir.1976) (*en banc*),[3] the court implied that bad faith on the part of the secured party may subordinate its rights in the collateral, stating that "[i]f the Article Nine secured party acted in good faith, it is prior . . . to an aggrieved seller."[4] *Id.* at 1243. This observation suggests that the interest of an Article Nine secured party who acted in bad faith might be subordinated to the interest of an unpaid seller. The Eighth Circuit has also commented on the significance of good faith by the debtor and the secured party in the enforcement of a security agreement. *Thompson v. United States,* 408 F.2d 1075, 1084 (8th Cir.1969). The *Thompson* court held that the good faith provision in the UCC (§ 1.203)" . . . permits the consideration of the lack of good faith by the debtor and secured party . . . to alter priorities which otherwise would be determined under Article 9." *Id.*

 In the instant case, the plaintiff has alleged that the defendants, including the movants, acted in bad faith and engaged in possibly conspiratorial actions in procuring the diamonds at issue. The good or bad faith of the defendants in enforcing the security agreement with D'Oro is a material

---

**2.** It is not at all clear from the record that the transaction was intended to be a consignment, and it appears to have many characteristics of a sale. The fact that the documents accompanying the diamonds state that they "remain the property of Limor Diamonds, Inc." has no bearing on this issue. *See* UCC § 2.326.

**3.** The Fifth Circuit decided *Matter of Samuels* under Texas law, which applies in the instant case as well, see note 1, *supra.*

**4.** The obligation of good faith that runs throughout the UCC (*see* § 1.203 is defined as "honesty in fact in the conduct or transaction concerned." UCC § 1.201(19).

fact which is yet to be developed. We make no findings as to this issue, but merely hold that under Rule 56 the plaintiff has the right to attempt to prove its allegations. If the defendants can establish that they did not act in bad faith with regard to the default and the taking of the collateral, their acts thereafter are insulated from attack.

The motion for summary judgment is denied, without prejudice to renewal upon the completion of discovery as to whether the defendants acted in good faith. The discovery should be completed within ninety days.

It is so ordered.