**TRANSPORTATION, INC., Appellee,**

v.

**MAYFLOWER SERVICES, INC., Appellant,**

and

**Shahbaz Hussain, Defendant.**

**No. 84–1668.**

United States Court of Appeals, Fourth Circuit.

Argued June 6, 1985.

Decided July 25, 1985.

D.S. Sastri, Silver Spring, Md. (Lawrence Schwartz, Washington, D.C., on brief), for appellant.

Thomas O. Lawson, Fairfax, Va. (Laurie E. Forbes, Lawson & Hood, Fairfax, Va., Morris Liss, Pollock, Vande Sande & Priddy, Washington, D.C., on brief), for appellee.

Before SPROUSE, ERVIN and WILKINSON, Circuit Judges.

PER CURIAM:

Mayflower Services, Inc. appeals from the district court's modification of injunctive relief previously granted Transportation, Inc. (d/b/a Red Top Cab Company) in a trademark infringement suit brought by Red Top against Mayflower under 15 U.S.C. § 1125(a) (1982). Because the modification of Red Top's injunctive relief did not constitute an abuse of discretion, we affirm the judgment of the district court.

I.

Red Top and Mayflower are both taxi cab companies that operate in Washington, D.C. Unlike Mayflower, however, Red Top also operates in northern Virginia and Maryland. The bulk of Red Top's taxi business consists of radio dispatched pickups rather than flag-downs made by pedestrians on city streets. On the other hand, Mayflower relies almost exclusively on flag-downs for its business.[1] The approximate number of taxi cabs in Red Top's fleet is 189, while Mayflower's slightly smaller fleet totals 150.

Since 1964 Red Top's taxi cabs have had a red/black color scheme. Sometime in 1982, Mayflower submitted yellow/black and red/black taxi cab color schemes to the D.C. Department of Transportation for approval. On December 15, 1982, Mayflower's proposed red/black color scheme was formally approved by the D.C. Department of Transportation. As a result, Mayflower painted all of its taxi cabs red and black in accordance with the approved color scheme and placed them into active service.

It soon became obvious, however, that Red Top and Mayflower's color schemes were so similar that the public could not—except upon close and careful inspection—distinguish a Red Top cab from a Mayflower cab. Indeed, Red Top established at trial that on numerous occasions its customers had been confused by the nearly identical color schemes used by each cab company.[2] Because of the public confusion, Red Top filed the instant trademark infringement suit against Mayflower on December 29, 1983 in federal district court. Red Top alleged that Mayflower's adoption of its color scheme violated the federal prohibition against false designations of origin and descriptions under 15 U.S.C. § 1125(a). Red Top's complaint also alleged that Mayflower's color scheme constituted common law market infringement and unfair competition.

On April 16, 1984, the district court found that Red Top's red/black color scheme had acquired a secondary meaning thereby entitling it to trademark protection under 15 U.S.C. 1125(a) and the common law. Based on the substantial customer confusion caused by Mayflower's color scheme, the district court held that Mayflower had violated Red Top's exclusive right to its red/black color scheme. To prevent future violations, the district court also concluded that injunctive relief was necessary. The entry of a final order was postponed so that the parties could estab-

[1]. Although Mayflower has no advertised radio dispatch taxi service, evidence adduced at trial indicated that—at least on some occasions—Mayflower had been monitoring Red Top's radio dispatches so that its cabs could pick up Red Top's customers before the Red Top cab arrived.

[2]. Evidence in the form of affidavits submitted by various Red Top cab drivers and customers recited numerous instances of actual public confusion between Mayflower and Red Top taxi cabs. (JA 32–48). In addition, the photograph-ic exhibits admitted into evidence plainly revealed the uncanny resemblance between Red Top and Mayflower's taxi cabs. (JA 49, 50, 119). At the time Red Top filed suit, its taxi cabs had red doors, a red hood lid, a red top, a black trunk lid, black rear wheel base panels, and black front wheel base panels. *Id.* Mayflower's color scheme was exactly the same as Red Top's except that it had a black top (instead of red) and red trunk lid (instead of black). *Id.*

lish a schedule to repaint Mayflower's taxi cabs.

To obtain specific injunctive relief, Red Top next submitted a proposed order to the district court that would have enjoined Mayflower from maintaining a red/black color scheme by specifically prohibiting the use of the color red. However, Mayflower offered an alternative proposal which required repainting only the trunk and hood lids from red to black. Under Mayflower's proposal, the doors on its taxi cabs retained their red color. Mayflower urged the district court to adopt its proposal as the least costly of the two. (JA 49, 96). According to Mayflower, its proposal was less costly because Red Top's proposal required considerably more relettering and repainting. *Id.* On April 27, 1984, the district court adopted Mayflower's proposal and entered an appropriate order.

Red Top then moved under Fed.R.Civ.P. 59(e) and 60(b) for a modification of the district court's April 27th order. At a hearing held on May 11, 1984, Red Top presented evidence that the relettering of Mayflower's taxi cab doors under its proposal would only cost $7.00 per cab. Red Top even offered to undertake the relettering for Mayflower at its own expense. Red Top also presented testimonial evidence indicating that Mayflower's proposed color scheme would not end public confusion. The district court found "that there would be minimal costs incurred in relettering the doors of [Mayflower's] cabs" under Red Top's proposal. (JA 188). The district court further concluded "that to allow [Mayflower] to continue to use red doors on its cabs would likely cause confusion and diminish the secondary meaning of [Red Top's] trade dress." *Id.* As a consequence, the district court enjoined Mayflower "from using any red and black combination on its cabs." *Id.* Mayflower appeals from this injunction on the basis that the district court's modification of its April 27th order constituted an abuse of discretion.

## II.

■ Mayflower first argues that the district court should not have entertained Red Top's motion for modification of the April 27th order. This argument is without merit. The district court clearly had both statutory and equitable authority to modify its April 27th order. Fed.R.Civ.P. 60(b) permits a district court to modify a final order on the grounds of, *inter alia,* mistake, inadvertence, fraud, misrepresentation, or any other reason justifying relief from the order. The decision to grant Rule 60(b) relief from a final order is committed to the sound discretion of the district court and can be reviewed only for abuse of that discretion. *Harmon v. Pauley,* 678 F.2d 479, 480 (4th Cir.1982). District courts have inherent equitable power to modify their injunctions to ensure that any injunctive relief granted fully vindicates the rights accorded by the underlying judgment. *United States v. United Shoe Corp.,* 391 U.S. 244, 248–49, 88 S.Ct. 1496, 1499–50, 20 L.Ed.2d 562 (1968); *Booker v. Special School District Number 1,* 585 F.2d 347, 352 (8th Cir.1978), *cert. denied,* 443 U.S. 915, 99 S.Ct. 3106, 61 L.Ed.2d 878 (1979); *King-Seeley Thermos Co. v. Aladdin Industries, Inc.,* 418 F.2d 31, 35 (2d Cir.1969); *Evans v. Buchanan,* 512 F.Supp. 839, 849 (D.Del., 1981).

■ In this case, the district court had ample reason to modify its initial grant of injunctive relief. First, Red Top offered additional evidence revealing that its proposal would not be costly. In fact, Red Top generously offered to repaint Mayflower's taxi cabs at its own expense. Consequently, cost was no longer an impediment to Red Top's proposal. Second, the district court found that Mayflower's proposal would *not* eliminate the public confusion over Red Top and Mayflower's taxi cabs. Although the district court reversed its previous finding concerning public confusion over the two companies' cabs, its second finding that customer confusion would continue under Mayflower's propos-

al is not clearly erroneous.[3] There was substantial, if not overwhelming, evidence of actual public confusion resulting from Mayflower's red/black color scheme. Manifestly, the photographic evidence alone reveals that Mayflower's proposal was unlikely to eliminate this confusion because it essentially retained the original red/black color scheme. Simply put, Mayflower's proposal would not have eliminated the *source* of the public's confusion over Red Top and Mayflower's taxi cabs.

Finally, Mayflower contends that as a matter of law the district court could not enjoin it from using the color red on its taxi cabs. In support of this contention, Mayflower first asserts that there is no competition between it and Red Top. It is beyond dispute, however, that both Red Top and Mayflower operate in the District of Columbia. Mayflower also argues that a protectible trademark cannot be based on a single color. But here, the district court merely enjoined Mayflower from using a red/black color combination and not from using the color red by itself. Unlike a single color, "a combination of colors will give one a right which will be protected against a similar combination which is indistinguishable therefrom." 74 Am.Jur.2d *Trademarks and Tradenames* § 41 (1974).

Based on the foregoing, we are convinced that the district court did not abuse its discretion by modifying the April 27th order. Accordingly, the judgment of the district court is hereby

AFFIRMED.

---

**3.** The predicate factual findings that must be made by the district court in order to establish a likelihood of confusion between two trademarks under 15 U.S.C. § 1125(a) may be reversed only if clearly erroneous. *Jellibeans, Inc. v. Skating Clubs, Inc.,* 716 F.2d 833, 840 (11th Cir.1983); *see also Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1514 (11th Cir.1984).