In re **CREATIVE GOLDSMITHS OF WASHINGTON, D.C.,** Debtor.

**NATIONSBANK OF D.C., N.A.,** Plaintiff,

v.

Jerry **BLIER,** et al., Defendants.

**Bankruptcy No. 94–1–1468–ESD.**
**Adv. No. 94–1–A–053–DK.**

United States Bankruptcy Court,
D. Maryland.

Feb. 16, 1995.

Michael D. Nord, Gebhardt & Smith, Baltimore, MD, for plaintiff.

Jerry Blier, pro se.

### *MEMORANDUM OPINION*

DUNCAN W. KEIR, Bankruptcy Judge.

On March 12, 1992, an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against Debtor. On April 16, 1992, this court entered an Order for Relief. On January 21, 1994, Plaintiff filed an adversary complaint alleging that the Plaintiff's collateral was wrongfully converted by Defendant. A

trial on the merits was held on September 12, 1994 (the "Trial").

At the conclusion of the Trial, this court found that Defendant converted the collateral and orally ruled that judgment should be entered for Plaintiff for the return of the converted collateral or its fair market value. Subsequent to that ruling, and prior to the entry of any order or judgment, on September 19, 1994, this court ordered that its prior ruling be withheld pending reconsideration. Pursuant to this court's Order dated September 21, 1994, a hearing was held on reconsideration (the "Reconsideration Hearing"). At the Reconsideration Hearing this court requested that the parties submit post hearing memoranda in support of their positions.

## I. FACTS

Creative Goldsmiths of Washington D.C., Inc. ("Debtor"), was a company in the retail jewelry business. Jerry Blier ("Defendant"), is engaged in the business of shipping various types of jewelry, including loose and mounted diamonds, to wholesale and retail jewelry businesses. On numerous occasions Defendant supplied diamonds to Debtor.

On or about October 26, 1987, Debtor renewed or entered into a loan agreement with Plaintiff, NationsBank of D.C., N.A. ("Plaintiff") in the principal amount of Three Hundred Forty–One Thousand Six Hundred Twenty–Five Dollars and Twenty–Nine Cents ($341,625.29). This loan was secured by a blanket lien on all Debtor's business assets, including its inventory. Subsequent to that loan, on March 27, 1991, Debtor executed a Commercial Note in the amount of Two Hundred Eighty–Nine Thousand Nine Hundred Forty–Six Dollars and Thirty–Four Cents ($289,946.34). This debt also was secured by a blanket lien on all of Debtor's business assets, including its inventory. Plaintiff properly perfected its security interest in Debtor's assets by filing financing statements in the appropriate locations.

On a number of occasions Debtor received from Defendant shipments of diamonds on memorandum. It is clear to this court that the diamonds received in this manner were intended to be resold to the general public. These diamonds were kept for approximately one to two weeks and, if not sold in that time period, were returned to Defendant.

Transfers made pursuant to memorandum agreements are the customary practice within the diamond industry. Witnesses testified repeatedly that the transfer of diamonds on memorandum represents an important as well as significant part of the industry.

The dispute in this case revolves around a number of diamonds returned to Defendant by Debtor pursuant to three memorandum agreements dated February 26, 1991, March 6, 1991, and October 10, 1991. These diamonds were returned to Defendant, in accordance with each memorandum, on March 11, 1991, March 15, 1991, and October 22, 1991 respectively (the "Returned Diamonds"). At no time during any of these transactions did Defendant notify Debtor's secured creditors of his interest in the Returned Diamonds, nor did he file financing statements to perfect his interest in the Returned Diamonds.

## II. LEGAL ANALYSIS

Preliminarily, Plaintiff argues that this court does not have the authority to, *sua sponte*, reconsider its September 12, 1994 oral ruling unless it finds that extraordinary circumstances exist which create a substantial danger that the underlying judgment is unjust.[1]

 It is well established that courts have the authority to reconsider a previous ruling even before the judgment becomes final.[2] In *Otis v. City of Chicago*, 29 F.3d

---

**1.** Plaintiff relies on *In re Etchin*, 128 B.R. 662 (Bankr.W.D.Wis.1991) to support its contention. This case, however, interprets the authority of the bankruptcy court to reconsider an order only under Rule 60(b) of the Federal Rules of Civil Procedure. This Court finds, however, that Plaintiff's reliance on Federal Rule 60(b) is misplaced, as Federal Rules 59(e) and 52(b) are more appropriate under the circumstances of this case.

**2.** The law is certainly clear that a bankruptcy court may reconsider orders after they have become final. *Transportation, Inc. v. Mayflower Services, Inc.*, 769 F.2d 952, 954 (4th Cir.1985); *McLaughlin v. McPhail*, 707 F.2d 800, 805 (4th Cir.1983). It is equally well established that the

1159 (7th Cir.1994), the Court noted that "until the court has entered a Rule 58 judgment or expressly indicated that none is contemplated ... it is always possible for the court to change its mind." *Id.* at 1164.

A court's authority to reconsider a decision before it becomes final is inherent in Rule 59(e) of the Federal Rules of Civil Procedure. Although Federal Rule 59(e) refers to the amendment of a final judgment, cases have repeatedly deemed motions for reconsideration as timely filed even though they were filed before the judgment became final. *See In re B.J. McAdams, Inc.*, 999 F.2d 1221, 1223 (8th Cir.1993); *Hilst v. Bowen*, 874 F.2d 725, 726 (10th Cir.1989). Under this interpretation, it is only logical to infer that a court may reconsider its ruling prior to the judgment becoming final.

The purpose of Federal Rule 59(e) is to permit the correction of any manifest errors of law or fact that are discovered, upon reconsideration, by the trial court. *National Metal Finishing v. Barclaysamerican*, 899 F.2d 119, 123 (1st Cir.1990). Thus, a court, under this rule, may amend, amplify or expand upon its initial findings even to the extent that the modified or additional findings in effect reverse the initial ruling.[3] *Id.*; *see also Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir.1986).

For the reasons set forth below, this court finds that its previous decision did not properly take into account all of the evidence presented. Accordingly, this court amends its previous oral decision in toto. The oral findings and decision are replaced by this opinion and the Order entered herewith.

### A. Priority of the Bank's Lien

At the Trial, Plaintiff averred that Defendant wrongfully converted Plaintiff's collateral by withholding the Returned Diamonds. As Plaintiff had a properly perfected security interest on all of Debtor's assets, Plaintiff

contends that it is entitled to the Returned Diamonds. More specifically, Plaintiff contends that the Returned Diamonds were, under § 2–326 of the Maryland Uniform Commercial Code, goods held on "sale or return," and, as such, are subject to the claims of the Plaintiff pursuant to the security agreement executed between Debtor and Plaintiff. Consequently, Defendant's wrongful withholding of the Returned Diamonds constituted a conversion of Plaintiff's collateral. Alternatively, Defendant contends that diamonds sold pursuant to memorandum agreements are sold on "sale on approval," and therefore the Returned Diamonds are not subject to the claims by Plaintiff.

The relative rights and priorities of the parties are governed by §§ 2–326 and 9–114 of Maryland's Uniform Commercial Code. The court must determine whether the Returned Diamonds were held by Debtor on "sale or return" or "sale on approval." If the transaction was "sale or return", it then must be determined whether any of the § 2–326 exceptions are applicable. Upon review of § 2–326 and the relevant case law, this court is unpersuaded by Defendant's contentions that the sale was a "sale on approval." Rather, this court finds that the Returned Diamonds were goods held on "sale or return," and therefore are subject to the security interest of Plaintiff.

Two reported decisions have decided the application of § 2–326 to jewelry transactions made pursuant to memorandum agreements. In *In re Monahan & Company Ltd.*, 29 B.R. 579 (Bankr.D.Mass.1983), a jewelry supplier left jewelry with the debtor pursuant to a memorandum agreement. The agreement stated that:

The goods described and valued as below are delivered to you for EXAMINATION AND INSPECTION ONLY and remain our property subject to our order and shall be returned to us on demand. Such merchandise, until returned to us and actually received, are at your own risk from all

decision to grant such relief is within the sound discretion of the court. *McLaughlin*, 707 F.2d at 805.

**3.** The *Barclaysamerican* court noted that this statement applies also to Federal Rule 52(b).

Federal Rule 52(b) provides that a court may amend its findings of fact and amend its judgment accordingly even when such action results in the reversal of the initial judgment. *National Metal Finishing*, 899 F.2d at 124.

hazards. NO RIGHT OR POWER IS GIVEN TO YOU TO SELL, PLEDGE, HYPOTHECATE OR OTHERWISE DISPOSE of this merchandise regardless of prior transactions. A sale of this merchandise can only be effected and title will pass only if, as and when we the said owner shall agree to such sale and a bill of sale rendered therefor.

*Id.* at 581.

Notwithstanding the language in that agreement, that Court ruled that the jewelry was delivered by the supplier for resale, and therefore the transaction was deemed to be a "sale or return" under § 2–326.[4] *Id.*

Similarly, in *Limor Diamonds, Inc. v. D'Oro By Christopher Michael, Inc.,* 558 F.Supp. 709, 711 (S.D.N.Y.1983), diamonds were shipped to the debtor by a jewelry wholesaler. These diamonds subsequently were returned to the wholesaler because they were not resold. That Court considered the transaction to be a "sale or return," and consequently ruled that the diamonds were subject to the claims of the debtor's secured creditors as they had a blanket lien on the inventory. *Id.* at 711.

In the present case, the memorandum agreements are substantially identical to that which was in dispute in the *Monahan* case. Furthermore, the weight of the evidence supports that the Returned Diamonds were delivered for resale and not for use by the Debtor. This court therefore finds that the Diamonds were goods held on "sale or return."

However, the inquiry is not complete, as § 2–326 provides three circumstances under which a consignor would maintain priority over a properly perfected secured creditor. Md.Code Ann.Com.Law I § 2–326 (1992).[5] "Consigned" goods will not be deemed to be sale or return and subject to creditors' claims, if: the consignor complies with a sign law, establishes that the consignee is generally known by its creditors to be substantially engaged in selling the goods of others, or files an appropriate financing statement. The first and third exceptions, revealed in subsection (a) and (c) of § 2–326(3), are not applicable in the instant adversary proceeding. The first exception clearly is not applicable as Maryland has not adopted the referenced sign law. The third exception equally is not applicable as Defendant concedes that the appropriate financing statements were not filed.

The second exception, however, is relevant in this adversary proceeding, as Defendant asserts that Debtor generally was known by its creditors to be substantially engaged in selling the goods of others. Defendant bears the burden of proof to prove the existence of this exception. *Matter of High–Line Aviation, Inc.,* 149 B.R. 730, 738 (Bankr.N.D.Ga.1992).

Defendant fails to offer sufficient evidence demonstrating that a *substantial* amount of the jewelry in Debtor's possession was in fact property of others. Although it is not necessary to demonstrate that a consign-

---

4. In drawing this conclusion the *Monahan* court held that this type of transaction is not controlled by the common law of bailment and consignment. *Monahan,* 29 B.R. at 582; *see also* White & Summers, *Uniform Commercial Code,* § 24–4 (3d ed. 1988).

5. This section provides, in pertinent part:

(2) Except as provided in subsection (3), goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in buyer's possession.
(3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making the delivery, then with re-

spect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum." However, this subsection is not applicable if the person making delivery:
(a) Complies with applicable law providing for a consignor's interest or the like to be evidenced by a sign, or
(b) Establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or
(c) Complies with the filing provisions of the title on secured transactions (Title 9).
Md.Code Ann.Com.Law I § 2–326 (1992).

ee is "primarily engaged in selling the goods of others" in order to establish that the consignee substantially dealt in the goods of others, there must be some evidence from which the fact finder could reasonably conclude that Debtor was generally known by its creditors to be substantially engaged in the sale of goods of others. *High–Line Aviation,* 149 B.R. at 738. Defendant presented testimony from various witnesses that jewelry stores, or persons working in them, are involved in selling the goods of others. Only one of Defendant's witnesses testified that jewelers are "substantially" engaged in selling the goods of others.

Defendant further fails to make an adequate showing that most of the Debtor's creditors had knowledge that Debtor was substantially engaged in selling the goods of others. *See In re Webb,* 13 U.C.C.Rep.Serv. 394, 1973 WL 21364 (S.D.Texas 1973) (It is the debtor's burden to show that most of the bankrupt's creditors knew that a considerable amount of the bankrupt's business was selling the goods of others). The evidence presented by Defendant merely demonstrates that the jewelers themselves knew that diamonds were usually transferred pursuant to a memorandum or consignment agreement, as opposed to whether most of Debtor's creditors had the requisite knowledge. *See In re Fabers, Inc.,* 12 U.C.C.Rep. Serv. 126, 1972 WL 20789 (Bankr.D.Conn. 1972). In fact, the record is devoid of any evidence demonstrating that the most of Debtor's creditors knew anything about the customs and practices of the diamond trade. Defendant failed to establish the applicability of this exception, therefore, this defense must fail.

■■ In that Defendant has not satisfied any of the exceptions listed in § 2–326, the rights of the parties are determined by § 9–114.[6] This section requires the consignor, in addition to filing the appropriate financing

statements, to contact all secured creditors of the consignee and provide them with notice of the consignment. Defendant failed to comply with any of the § 9–114 requirements, and consequently Plaintiff's perfected security interest has priority over any interest of Defendant with respect to the Returned Diamonds. *See* Md.Code Ann.Com. Law I § 9–114 (1992); *In re Alper–Richman Furs, Ltd.,* 147 B.R. 140, 149 (Bankr.N.D.Ill. 1992).

### B. Conversion

■■ In Maryland, "conversion has been generally defined as the wrongful exercise of dominion by one person over the personal property of another." *Kalb v. Vega,* 56 Md.App. 653, 665, 468 A.2d 676, 683 (1983). In order to successfully plead conversion, it must be shown that the appropriation of property was unauthorized or without the consent of the owner. *Matter of Burdick,* 65 B.R. 105, 108 (Bankr.N.D.Ind.1986). An act which would otherwise constitute a conversion may be precluded from having that effect by a plaintiff's consent to the act. Restatement (Second) of Torts § 252 (1965). Nonconsent to the possession and disposition of the property by Defendant are therefore indispensable. If an owner expressly or impliedly assents to, or ratifies the taking, use, or disposition of the property, the owner cannot recover for conversion. *Rose Brothers, Inc. v. City of Alva,* 356 P.2d 1083, 1085 (Okla.1960).

■■ In the instant case, Debtor received, and subsequently returned, diamonds to Defendant pursuant to certain memorandum agreements. Plaintiff alleges that these transfers wrongfully deprived it of its right to those diamonds as collateral under the terms of the security agreement. This court, however, finds Plaintiff's contention unpersuasive. More specifically, this court finds that Plaintiff had actual knowledge over the

---

**6.** Section 9–114 is interpreted as applying only in instances where the two exceptions listed in § 2–326(3)(a) and (b) are not applicable. When these exceptions to § 2–326 are not satisfied, the language of § 9–114 requires the consignor to file under Article 9 to prevent the consigned goods from becoming subject to security interests of the consignee's creditors. *See In re Alper–Richman*

*Furs, Ltd.,* 147 B.R. 140, 149–50 (Bankr.N.D.Ill. 1992) (§ 9–114 should be limited to situations where the other exceptions to § 2–326(3) do not apply); *In re State Street Auto Sales,* 81 B.R. 215, 217–18 (Bankr.D.Mass.1988) (same); *Matter of Great American Veal, Inc.,* 59 B.R. 27, 32 (Bankr. D.N.J.1985) (same); *In re Lebus–Albrecht Lumber Co.,* 38 B.R. 58, 61 (Bankr.D.N.D.1984) (same).

six year lending relationship that Debtor was receiving and returning diamonds pursuant to memorandum agreements, and therefore, by its inaction, implicitly authorized the transfer of diamonds.

All of the witnesses brought forth by Defendant testified that diamonds commonly are transferred on memorandum. Further support is found in the testimony of Mr. Mervis, who stated not only that the majority of the diamond business was carried on through memorandum agreements, but also that any financial institution servicing the jewelry industry would have knowledge of transactions made on memorandum and the procedures associated with that type of transaction.

Testimony also revealed that it is customary in the diamond industry that diamonds received on memorandum are kept by the recipient for approximately one to two weeks and then, if not sold during that period of time, returned to the supplier. This fact was supplemented and confirmed by the three memorandum agreements submitted as Plaintiff's Exhibits 7 through 10. All of the diamonds received by Debtor pursuant to those memorandum agreements, and subsequently not sold, were returned within the customary two week period.

The testimony of Mr. Kalin, vice president of Plaintiff, demonstrated that Plaintiff was familiar with the business operations of the jewelry industry and that Plaintiff had several discussions with Debtor concerning the operation of its business. Mr. Gross, president of Debtor, testified that during at least one of those conversations he informed Mr. Kalin that Debtor transacted business pursuant to memorandum agreements. Furthermore, the evidence revealed that Debtor and Plaintiff have been in a financial relationship since at least October of 1987.

In light of the evidence presented, this court finds that Plaintiff had actual knowledge of the methods by which Debtor conducted business.[7] Given the communication between the Debtor and Plaintiff, the length of time in which Debtor and Plaintiff have been engaged in a significant financial relationship, the predominant nature of memorandum agreements in the diamond industry, and Plaintiff's inaction with respect to memorandum transactions, this court finds that Plaintiff implicitly authorized Debtor to receive and return diamonds pursuant to memorandum agreements. *See Matter of Burdick*, 65 B.R. 105 (Bankr.N.D.Ind.1986).

Even if this court were to have found that the acceptance back by the Defendant of the Returned Diamonds constituted an unauthorized deprivation of Plaintiff's security interest, this court in its discretion finds that the damages were fully mitigated. It was the uncontradicted testimony of three expert witnesses that the diamonds supplied under memorandum were, if unsold, required to be returned to the supplier within two weeks. The court notes that the timing of the three memoranda in question is consistent with this testimony, that is, although additional diamonds were supplied under the second memorandum, while the diamonds under the first memorandum were outstanding, the diamonds under the first memorandum were not overdue. All of the Returned Diamonds were returned within the customary two weeks. The Defendant testified that at the time of bankruptcy, the Defendant was owed $50,000.00 by the Debtor for diamonds which had been supplied to the Debtor and neither been returned, nor paid for. Further evidence of the fact that the Defendant supplied additional diamonds, other than the Returned Diamonds, is found in the proof of claim in the amount of $38,273.40 filed by the Defendant in this bankruptcy case. The Court takes judicial notice of this proof of

---

7. This court's finding that Plaintiff had knowledge that Debtor was engaged in memorandum transactions is not inconsistent with its ruling on the § 2–326 issue. Section 2–326 requires that most of the creditors have knowledge that a substantial amount of the Debtor's business is selling goods of others. Plaintiff represents only one of Debtor's creditors and therefore does not constitute "most" of the creditors. This is true even though Plaintiff represents the majority of Debtor's total indebtedness. *See In re Webb*, 13 U.C.C.Rep.Serv. 394, 1973 WL 21364 (S.D.Texas 1973). In addition, there was no testimony concerning whether or not the amount of memorandum transactions was a substantial amount of the Debtor's business, which business included retail non-custom jewelry sales.

claim, which stands as prima facie proof of Defendant's claim. 11 U.S.C. § 502(a). This claim exceeds the value ($33,579.50) of the Returned Diamonds.

Defendant argued from this evidence that the Defendant would not have supplied the additional diamonds subsequent to the Returned Diamonds, if he never received either payment for, or return of, the Returned Diamonds. This court finds as a reasonable inference from this evidence, that additional diamonds were supplied subsequent to the memoranda in question (hereinafter the "Additional Diamonds"), that the value of those diamonds equalled or exceeded the value of the Returned Diamonds and that the Additional Diamonds were neither returned to, nor were proceeds of, the sale of those diamonds remitted to the Defendant.

 The interest of the Plaintiff in the Returned Diamonds was a security interest. That security interest automatically attached to the Returned Diamonds when supplied by the Defendant, as discussed earlier in this opinion. Likewise, a security interest automatically was obtained by the Plaintiff in the Additional Diamonds, when they were supplied by the Defendant to the Debtor. Thus, subsequent to the return of the Returned Diamonds, and the alleged wrongful conversion of Plaintiff's security interest in the Returned Diamonds, the Defendant, in effect, supplied to the Plaintiff a security interest of equal quality and of greater amount. Under the circumstances of this adversary proceeding, such subsequent provision of an equal or greater security interest to the Plaintiff mitigated the damages suffered by the Plaintiff from the alleged conversion.

"The privilege of mitigation of the damages by return of the chattel is equitable in nature. When the privilege is granted, there is specific relief, such as is commonly afforded by equity. The privilege is not a matter of absolute right but lies within the discretion of the trial court in light of all of the circumstances in the case."

Restatement (Second) of Torts § 922 cmt. h (1965).

Although generally mitigation of damages in conversion has been limited to return of the exact chattels converted, where the property interest converted is a security interest in inventory, and the subsequent provision by the Defendant is of the same type of inventory to which the same "floating lien" attaches, the court may exercise its discretion and allow mitigation of damages up to the value of the security interest in the subsequently provided inventory (the Additional Diamonds).[8]

 Plaintiff argues against mitigation by asserting that it was entitled to the security interest in the Returned Diamonds *and* the Additional Diamonds. Certainly under some circumstances, Plaintiff's argument would be meritorious. For example, if a supplier were supplying goods on a periodic basis to a customer which had granted a blanket security interest on inventory to a lender, the lender would be entitled to the value of its security interest in all goods supplied and would have a cause of action for conversion if any of those goods were returned to the supplier without the consent of the lender. However, under the facts of the instant adversary proceeding, the court finds there would have been no provision of the subsequent security interest had the Returned Diamonds not been received back by the Defendant under the terms of the memoranda. In exercising its equitable discretion to allow mitigation, the court must take great care in distinguishing between the case of a lender whose security interest has been violated under circumstances in which the lender had a reasonable expectation that such goods would be available as collateral to the lender, upon default of the borrower; as opposed to circumstances in which the lender had no such reasonable expectations. On the one hand, the court should vigilantly protect the rights of the lender where a Debtor out of the ordinary course of business returns goods without the consent of the lender for

---

8. The mitigation of damages for return of converted property has been recognized in Maryland. *See Keyes v. Chrysler Credit Corp.*, 303 Md. 397, 414, 494 A.2d 200, 208 (1984). As the action is brought by the Plaintiff for enforcement of a state law cause of action of tort, Maryland law is determinative.

whatever reason, including, but not limited to, the Debtor's seeking favor with suppliers for possible future endeavors. On the other hand, courts should not be used by lenders to take advantage of alleged technical conversions, which transfers were in fact part of the known and reasonably expected ordinary course of the borrower's business.

Plaintiff makes one final argument in an attempt to defend against the exercise by the court of its discretion to allow mitigation. Plaintiff points out that it did not receive any of the proceeds from the Additional Diamonds and therefore argues Plaintiff did not receive the value to which it was entitled under the Restatement and cases cited above. Plaintiff errs in this argument because the interest of Plaintiff in the Returned Diamonds was a security interest. The interest arising from the shipment of the Additional Diamonds was a new security interest. The fact that the *Debtor* failed to pay Plaintiff from the proceeds of the Additional Diamonds at most created a default under the loan contract between Debtor and Plaintiff but does not obviate or eliminate the fact that the subsequent provision of value by the Defendant occurred. Plaintiff's loss from the default under its loan contract occurred because the Debtor failed to pay sufficient sums of money to the Plaintiff from all of the Debtor's revenue sources. This risk was assumed by Plaintiff in the making of the loan contract and not occasioned by the facts of this adversary proceeding.

For these reasons, the court finds that no conversion of goods occurred and that if conversion had occurred, full mitigation of all damages was subsequently supplied by the Defendant and therefore, in the court's discretion, no right to damages remains to the Plaintiff. Accordingly, judgment shall be entered in favor of the Defendant.