**In re Darla Sue REINICKE, Debtor.**

**No. 03–91150–DML–13.**

United States Bankruptcy Court, N.D. Texas, Fort Worth Division.

Jan. 9, 2006.

Weldon R. Grisham, Fort Worth, TX, for Debtor.

Behrooz P. Vida, Venable & Vida, LLP, Bedford, TX, for Debtor.

Hugo Xavier de los Santos, Carlos Martinez, San Antonio, TX, for creditor.

## MEMORANDUM OPINION

DENNIS MICHAEL LYNN, Bankruptcy Judge.

Before the court is the issue of whether to confirm Debtor's chapter 13 plan (the "Plan"). Confirmation was opposed by Irene Alma Payne Lemons ("Lemons"), Debtor's mother, and Hugo Xavier DeLos Santos ("Santos" and, with Lemons, "Objectors"), who is counsel to and joint owner

of a judgment against Debtor with Lemons. On December 19, 2005, the court held a hearing on confirmation of the Plan at which time it heard testimony from Debtor, Tim Truman, Debtor's chapter 13 trustee (the "Trustee"), Angela Allen ("Allen") counsel to the Trustee, St. Clair Newbern ("Newbern"), counsel to Debtor's ex-husband Klaus Paul Reinicke ("K. Reinicke"), Debtor's ex-husband, Donna Dockal ("Dockal"), Debtor's sister, Dr. Lester Payne ("Dr. Payne"), Debtor's brother, and Lloyd Payne ("Mr. Payne"), another of Debtor's brothers. The court also received into evidence a number of exhibits, referred to as necessary below.

The court exercises core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(2)(L). This memorandum opinion constitutes the court's findings of fact and conclusions of law.[1] See FED. R. BANKR. P. 9014 and 7052.

## I. Background

The genesis of this bankruptcy case is a family dispute which has been fought out in at least four courts so far. It appears that the dispute centers on property inherited from Floyd Leslie Payne ("FLP") upon his death in 1974 by Lemons (his wife) and Debtor and her siblings (two of whom have not played an active role in proceedings before this court).

Based on allegations that Debtor and Dockal had diverted funds due to Lemons to property owned by K. Reinicke, with the support of Dr. Payne and Mr. Payne, Santos brought suit on behalf of Lemons and obtained a judgment (the "Judgment") against Debtor and Dockal in the 73d Judicial District Court of Bexar County, Texas, on July 14, 2003. The Judgment is held in the name of Santos and Lemons and was in the original amount of $100,535.89 plus court costs.[2]

Following entry of the Judgment, Debtor took various steps which Objectors claim, no doubt correctly, were intended, inter alia, to frustrate their rights as creditors. On August 1, 2003, Debtor executed quitclaim deeds (the "Quitclaim Deeds") to K. Reinicke transferring to him whatever interest she had in property in Burnet County, Texas. See Objectors' Ex. A (copies of three deeds). Next, she and K. Reinicke dissolved their marriage pursuant to an Agreed Final Decree of Divorce (the "Divorce Decree"), dated October 9, 2003. In the Divorce Decree, Debtor agreed to a division of property, which included the award to K. Reinicke of, inter alia, the same Burnet County properties. Objectors' Ex. B (the "Divorce Decree") at p. 5. On November 21, 2003, Debtor filed her petition commencing this chapter 13 case.

K. Reinicke subsequently filed his own chapter 13 petition on April 9, 2004. His case is pending before Hon. Harlin D. Hale in the Dallas Division of this court.[3]

1. The court announced findings and its ruling on the record following the December 19 hearing. The court may supplement or alter those oral findings prior to entry of an appealable order respecting confirmation. See NationsBank of D.C., N.A. v. Blier (In re Creative Goldsmiths), 178 B.R. 87, 91 (Bankr.D.Md. 1995) (court's authority to amend findings before entry of final judgment is inherent in FRCP 59(e)); 12 MOORE'S FEDERAL PRACTICE § 59.33 (Matthew Bender 3d ed.2005) ("a court should have the power to alter or amend a judgment on its own motion"). The court adopts and incorporates its oral findings and conclusions (except as any may be inconsistent with this memorandum opinion).

2. Objectors' proofs of claim in Debtor's case were in the amount of $140,908.26, reflecting the addition of post-judgment interest and other charges.

3. K. Reinicke's case had to be handled by a different chapter 13 trustee than Debtor's. Hence, the cases were filed in different divisions.

*See, generally,* docket sheet for case no. 04–81384, Debtor's Ex. 15 (the tabs identifying Debtor's exhibits follow, rather than precede, the documents they mark; though inconsistent with the record of the December 19 hearing in places, the court here will use designations as in Debtor's index of exhibits). Dockal also at some point sought relief under the Bankruptcy Code (the "Code")[4], in her case in chapter 7, in the Western District of Texas. *See* Debtor's Exhibit 14, the Final Judgment in Objectors' suit seeking exception of their debt based on the Judgment from Dockal's discharge. Objectors were unsuccessful in that suit, in which judgment was entered on Debtor's motion by Hon. Leif M. Clark on March 26, 2005, after (the court understands) Objectors' full evidentiary presentation.

At about the same time, the Trustee was negotiating with K. Reinicke through the latter's counsel, Newbern, and K. Reinicke's trustee. The Trustee asserted claims against the properties held by K. Reinicke by reason of the potential voidability of any transfer effected through the Quitclaim Deeds or the Divorce Decree. Although K. Reinicke claimed that the properties transferred had been either directly inherited or purchased with inherited money, K. Reinicke ultimately agreed that the properties involved would be sold and half of 75 percent of the net proceeds of sale, up to $75,800, would be paid to Debtor's estate (and, hence, her creditors). *See* settlement motion, Debtor's Ex. 12.

The result of this settlement was the Plan—and its promise of 100% payment of allowed unsecured claims against Debtor. The settlement was approved in K. Reinicke's case by Judge Hale by order entered on April 21, 2005. *See* order, Debtor's Ex. 13.[5] As Santos filed a notice of appearance in K. Reinicke's case (Debtor's Ex. 15, entry # 32) in June of 2004 and apparently asserted a claim based on the Judgment, he would have had ample notice of the proposed compromise (Debtors Ex. 12, p. 9 reflects K. Reinicke's motion was mailed to those filing notices of appearance on March 7, 2005, 1–1/2 months before the April 19 hearing). Indeed, Santos filed an objection but failed to appear at the April 19 hearing (Debtor's Ex. 12, p. 2).

Unfortunately, the court does not have before it transcripts of the hearings before Judge Hale and Judge Clark—let alone any transcripts of proceedings in state court antecedent to the Judgment.[6] Nor does the court have before it the specific findings made on the record by Judge Clark (*see* Debtor's Ex. 14). The court cannot therefore apply the decisions of Judge Hale or Judge Clark to preclude the necessity for it to cover the same ground. On the other hand, the court may draw inferences as appropriate from the dispositions by the state court (the Judgment) and the two other bankruptcy courts involved.

In the case at bar, Objectors filed untimely claims that were disallowed by Order of June 22, 2005.[7] They have previ-

---

4. 11 U.S.C. §§ 101, *et seq.*

5. It is not clear why the settlement was not, at that time, presented to this court as well. As the settlement negotiations included the Trustee and Allen, the court is confident negotiations were proper. For the same reasons the court confirms the plan the court would find that the compromise benefits Debtor's estate and meets the requirements for approval of a compromise under FED. R. BANKR. P. 9019.

6. Dockal and Debtor both testified to the extensive proceedings leading to the Judgment.

7. Santos filed a motion seeking leave to file a late proof of claim on June 30, 2004. The court denied the motion with prejudice on July 6, 2004, and Objectors appealed. The District Court affirmed this court's order in part, but reversed this court as to prejudice to further filings. *See* Memorandum Opinion of

ously sought dismissal of this case.[8] They now object to the Plan on the basis that it was not filed in good faith.[9] They base their assertion on the following: (1) the transfers, which were the subject of the Quitclaim deeds and were reflected in the Divorce Decree, were fraudulent; (2) Debtor has concealed interests she owns in real property in her bankruptcy case; (3) Debtor and K. Reinicke's divorce is a sham; and (4) Debtor has made numerous mistakes in her schedules and statement of affairs. Objectors conclude by urging that, since the result of confirmation will be (if the Plan is performed fully, *see* Code § 1328(a)) discharge of the Judgment, the Plan is not a good faith effort, at least as to them.

## II. *Discussion*

■■■■ Reduced to its most basic level, the requirement that a plan be proposed in good faith is met if it reflects a debtor's intent to restructure his debt and satisfy his creditors as contemplated by the Code. *See Cedar Shore Resort, Inc. v. Mueller (In re Cedar Shore Resort, Inc.),* 235 F.3d 375, 379 (8th Cir.2000) ("Good faith implies an honest intent and genuine desire on the part of the petitioner to use the statutory process to effect a plan of reorganization and not merely as a device to serve some sinister or unworthy purpose.") (quoting *In re Metro. Realty Corp.,* 433 F.2d 676, 678 (5th Cir.1970)). There can be no question that the Plan satisfies this test. Un-

der the Plan, unsecured creditors of Debtor having claims totaling $83,073.57 will be paid in full. Where, as here, substantial unsecured debt is to be satisfied in full under a plan, it seems to the court that there should be a presumption that the debtor has proposed the plan in good faith.

There is absolutely no evidence before the court of improper conduct by Debtor during this chapter 13 case. The Trustee offered no testimony that Debtor failed to cooperate during her chapter 13 case.[10] There is no suggestion in the record that Debtor manipulated the claim objection process to cull otherwise proper claims. There is no evidence that Debtor somehow interfered with creditors' ability to participate under the Plan. In short, the court has no basis to find that Debtor has not proceeded in this case as contemplated in the Code or that Debtor's Plan was intended other than to rehabilitate Debtor through satisfaction of her debts.

Nor does Debtor's prepetition conduct warrant denial of confirmation of her Plan. Debtor's unsecured debts, according to her uncontradicted testimony, were not incurred in contemplation of bankruptcy. As to the assets transferred by the Quitclaim Deeds and the Divorce Decree, Debtor did not conceal the transfers (*see* Debtor's Ex. 4 and 5, question 10) and apparently cooperated in the settlement negotiated by the Trustee with the K. Reinicke estate. Thus, the court does not

---

November 17, 2004. Debtor then objected to Objectors' claims.

8. These motions are pending and are rendered moot by confirmation of the Plan.

9. Debtor filed her first final plan on January 18, 2005. Objectors argued it was not filed in good faith. At the hearing on May 23, 2005, the court held that Debtor had not proven that plan was filed in good faith. *See* Memorandum Opinion entered on June 7, 2005; Fed R. Bankr P. 3015(f).

10. Debtor did draw a notice of deficiency for her schedules, required a second section 341 meeting, and was the subject of dismissal or conversion motions by the Trustee. *See* Debtor's Ex. 11, entries 8, 9, 10, 28, 34, 36 and 77. However, these events are not uncommon in chapter 13 cases, and the mere existence of such docket entries is insufficient to support a conclusion that Debtor has abused the chapter 13 process.

find in the liabilities and assets dealt with by the Plan any evidence that the Plan is other than a good faith effort by Debtor to satisfy her debts.

Objectors contend that Debtor concealed her interest in certain real estate in Val Verde and Uvalde Counties from the Trustee (Objectors' Ex. C; last will and testament of FLP). But Debtor testified that she does not believe she owns any interest in the real estate, and the Trustee has not adopted Objectors' position—from which the court infers that the Trustee is satisfied with Debtor's explanation. In any case, Debtor's testimony in this case is a judicial admission, and the court finds and concludes that Debtor has relinquished any interest she may have had in the Val Verde and Uvalde County properties.[11]

Objectors argue that Debtor's divorce was a sham. If it was, it was not concealed, and the divorce has not affected recovery by creditors of Debtor.[12] Moreover, the evidence Objectors cite does not prove the divorce *was* a sham. Dr. Payne and Mr. Payne testified that Debtor and K. Reinicke still can be found together in K. Reinicke's home. The two sometimes attend court sessions together and otherwise spend time together. This evidence proves Debtor and K. Reinicke remain friendly, not that their divorce was a sham.

Objectors urge that the court find bad faith in the proposal of the Plan in errors committed by Debtor in preparation of her schedules and statement of affairs. This court has held, pursuant to controlling precedent, that numerous errors in a chapter 7 debtor's schedules and statement of affairs must result in denial of the debtor's discharge under Code § 727(a)(4). *See Cadle Co. v. Mitchell (In re Mitchell)*, 102 Fed.Appx. 860 (5th Cir.2004); *United States Trustee v. Moschella (In re Moschella)*, 2004 Bankr.LEXIS 1108, No. 03–47690–DML–7 (Bankr.N.D.Tex. Aug. 9, 2004). The court is not prepared, absent direction of an appellate court, to extend this rule to assessing good faith in the proposal of a plan in chapter 13.

This is especially true where, as here, numerous creditors would be disadvantaged through loss of full satisfaction of their claims under the Plan. Indeed, the remedy Objectors truly seek is a level playing field as between, on the one hand, those who timely filed claims and thus would be paid under the Plan and, on the other hand, Objectors and others who filed their claims late or not at all and so failed to comply with the Rules of Bankruptcy Procedure and the notices provided to them in this chapter 13 case. If the court denies confirmation of the Plan, Debtor will be left with the options of converting to chapter 7, refiling chapter 13 or dealing with her creditors outside of bankruptcy. If Debtor converts her case, a new bar date will apply (FED. R. BANKR. P. 1019(2)), thus making Objectors' claims timely.[13] A new filing under chapter 13

---

11. The court would favorably consider a motion for relief from stay to quiet title to the property.

12. Absent the divorce, Debtor could have filed (but was not required to file) a joint case with K. Reinicke. Code § 302. Had Debtor and K. Reinicke filed jointly, Debtor's creditors would have been no better off than under the Plan.

13. If Debtor converts to chapter 7, Objectors could also object to discharge of their claims pursuant to Code § 523(a)(4). That such an objection failed in Dockal's case (indeed, Objectors apparently failed before Judge Clark even to provide sufficient evidence to support their claim of nondischargeability since Dockal was granted judgment after Objectors rested; Debtor's ex. 14) does not necessarily dispose of it in Debtor's case. However, the court infers Objectors' case was weak, and the court's understanding of Code § 523(a)(4) is that it provides a narrow exception to discharge, largely limited to formal trust situa-

(or 11) following a dismissal of the instant case would give Objectors a second chance to file timely claims. If Debtor forsakes bankruptcy court entirely, Objectors will also avoid any consequence for their failure to file their claims timely.

 The court, in this circumstance, will take into account the motives of Objectors in trying to prevent confirmation of the Plan. In considering whether a Debtor acts in good faith, the court may consider the totality of the circumstances. *See Jasik v. Conrad (In re Jasik)*, 727 F.2d 1379, 1383 (5th Cir.1984) ("The 'good faith' of a reorganization plan must be 'viewed in light of the totality of the circumstances surrounding confection' of the plan.") (quoting *Public Fin. Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir.1983)). Here, creditors who followed the rules and timely filed claims would be prejudiced if confirmation is denied. Just as in a determination of excusable neglect as a basis for relief from a chapter 11 bar date the court may consider prejudice to other creditors. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (courts should consider all relevant circumstances in determining whether to extend bar date for excusable neglect); *In re R.H. Macy & Co., Inc.*, 161 B.R. 355, 361 (Bankr. S.D.N.Y.1993) ("Extending the bar date to allow any of the Movants to file a proof of claim could result in the depletion of assets which would otherwise be available for distribution to creditors who have filed timely proofs of claim."); 9 COLLIER ON BANKRUPTCY ¶ 3003.03[4][b] n. 33 (15th ed. rev'd) ("The proper approach would appear to be review of all factors cited by the Supreme Court (and other appropriate factors such as prejudice to creditors.")), so, too, the court may consider potential prejudice to holders of allowed claims in determining good faith for purposes of confirmation. *See Fishell v. Soltow (In re Soltow)*, No. 1:95–CV–15, 1995 U.S. Dist. LEXIS 7461, at *10 (W.D.Mich. May 5, 1995) (district court affirming bankruptcy court's denial of confirmation and dismissal of debtor's chapter 13 case for lack of good faith because the prejudice creditors suffered in having payment of their debts delayed was not "heavily outweighed" by the benefits of the plan).

In fact, the analogy to the determination of allowability of a late claim is especially apt in the case at bar. Here the effect of the prejudice to holders of allowed claims is benefit for those who did not comply with the rules.[14] If confirmation were denied, in a succeeding chapter 7 case or a new chapter 13 case the total amount of claims would go up. It is unlikely that Debtor's estate—whether subsequent proceedings were in chapter 13 or chapter 7— would grow (the settlement between the estates is probably binding on the Trustee's successors[15]). The result, therefore,

---

tions. *See Kirchner v. Sticht (In re Sticht)*, 02–45979–DML–7, 2005 Bankr.LEXIS 2044, at *16 (Bankr.N.D.Tex. Oct. 20, 2005); *In re Twitchell*, 91 B.R. 961, 964–965 (D.Utah 1988), *citing Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 334, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367 (10th Cir.1996); 4 COLLIER ON BANKRUPTCY ¶ 523.10[1][d] (15th ed. rev'd).

14. Debtor challenged Objectors' standing to object to confirmation. The court allowed Objectors to address the good faith issue. In some chapter 13 cases, there would be no

prejudice to holders of allowed claims—*e.g.* where the dividend under the plan is zero. In other cases, if, *e.g.*, a creditor or group of creditors were hindered in asserting their claims due to misconduct of the debtor, denial of confirmation might be warranted even if other creditors are prejudiced. No such circumstances exist in the instant case.

15. According to the motion to compromise the inter-estate dispute, approval resulted in release of K. Reinicke from further liability to Debtor and Debtor's estate (Debtor's Ex. 12, ¶ 12). While it does not have before it the

would be a smaller dividend paid to more creditors.

The court is fortified in its conclusions by the many opportunities Objectors have had to make their case. In Dockal's case, Objectors were unsuccessful in opposing discharge of the debts owed by Debtor's co-Judgment debtor. In K. Reinicke's case, Objectors contested the settlement between the estate in that case and Debtor's estate. There, too, Objectors failed to follow the rules, not appearing at the hearing on the settlement. In the case at bar, despite full notice and multiple opportunities to be heard, Objectors have shown no more than that Debtor's Plan, if performed fully, will effect the discharge of their claims without any payment. But this result, fair or unfair, is a product of the law.

Moreover, objection to confirmation of the Plan is only the latest of numerous intra-family offensive thrusts or defensive parries in a quarrel among Debtor and (at least some of) her siblings. The court understands that less than one-third of the claims based on the Judgment (or about $40,000) was at issue in the underlying dispute. Yet this internecine warfare will probably continue in one forum or another for years to come.[16]

While this court deplores family feuds generally, their existence rarely will have an impact on a decision of the court. However, in the case at bar, the apparent malice of Debtor and her siblings toward one another persuades the court that it would be highly inequitable to hold hostage creditors with allowed claims in Debt-

or's case to the vagaries of a family conflict. Rather, the court concludes Debtor has (whether or not intentionally) acted with singular justice. Under the Plan, arms-length creditors will be paid in full, their claims severed from those of insiders (which Lemons, Dr. Payne, Mr. Payne and Dockal clearly are; Code § 101(31)). By good fortune, creditors will not have their return diluted by insider claims. This is a good result and fully consistent with Congress' purposes in enacting chapter 13.

### III. *Conclusion*

For the foregoing reasons, the court finds and concludes that the Plan meets the good faith requirement of Code § 1325(a)(3). There is no dispute that the Plan otherwise meets the requirements of sections 1325(a) and (b) and 1322. The Plan will therefore be confirmed. The Trustee is directed to submit an order to such effect. Also, for the reasons stated, and by reason of being moot, Objectors' motions to dismiss this chapter 13 case must be denied. Debtor's counsel is directed to prepare and submit an order to such effect.

---

settlement agreement, the court infers from the release provision in the motion that it is binding on the Trustee's successors. The settlement having been approved by court order in K. Reinicke's case, dismissal of Debtor's case would not affect the release of claims.

**16.** Debtor may gain the protection of Code § 524(a) and is presently protected by the automatic stay of Code § 362(a). These provisions will prevent at least some potential litigation involving Debtor.